RUEBEN METZ, Plaintiff, *v.* FAIRBURY HOSPITAL *et al.*, Defendants—(Fairbury Hospital, Third-Party Plaintiff-Appellant, *v.* Carle Clinic Associates, Inc., *et al.*, Third-Party Defendants-Appellees).

Fourth District No. 4—82—0797

Opinion filed November 3, 1983.

Costigan & Wollrab, of Bloomington, for appellant.

Todd M. Tennant, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellees.

JUSTICE MILLER delivered the opinion of the court:

This appeal involves the necessity and sufficiency of expert testimony on the breach of the applicable standard of care in a medical malpractice action. The trial court found that Fairbury Hospital, the third-party plaintiff, had failed to introduce the necessary evidence of a breach of the standard of care; therefore, the court directed verdicts in favor of the third-party defendants at the close of Fairbury Hospital's case in chief. Fairbury Hospital appeals that decision, and we affirm.

Rueben Metz was admitted to Fairbury Hospital March 25, 1979, for treatment of severe abdominal pain. Several days later, in greater pain, he was transferred at his request to Carle Foundation Hospital in Urbana, where an exploratory laparotomy was performed five or six hours after his arrival. In the course of the operation a Foley catheter that had been inserted during Metz' stay at Fairbury Hospital was discovered to be out of its proper position: the end of the catheter and the inflatable balloon designed to hold it in place were in the patient's prostatic urethra rather than his bladder.

Metz sued Fairbury Hospital and the two doctors that had treated him there, Kothari and Secoquian, for negligence. Fairbury Hospital then filed a third-party complaint, the subject of this appeal, against Carle Clinic Associates, Inc., and the three doctors that had treated Metz there, Shuck, Lansford, and Thow. Fairbury Hospital alleged the third-party defendants' negligence and asked for contribution in the event of its own liability. Midway through trial, after Metz had

completed his case in chief, he dismissed Kothari and Secoquian as defendants and settled with Fairbury Hospital for $25,000. The trial then continued on the third-party action. At the close of Fairbury Hospital's case in chief, the trial judge directed verdicts in favor of the third-party defendants (the Carle doctors) because the hospital had failed to establish through expert testimony a breach of the relevant standard of care; the trial judge also rejected Fairbury Hospital's argument that expert testimony was unnecessary in this case.

The premise of Fairbury Hospital's third-party complaint is that the doctors at Carle misdiagnosed Metz' problem and performed an unnecessary operation: the difficulty caused by the catheter could have been discovered and solved without the laparotomy. Fairbury Hospital alleges that the unnecessary operation resulted in the main from the Carle doctors' negligent failure to request the records of Metz' fluid input and output while at Fairbury Hospital and from their negligent failure to test the placement of the catheter. Fairbury Hospital argues that those records or a simple manual test of the catheter's position would have disclosed the problem. The Carle doctors do not dispute that Metz' problem was incorrectly diagnosed, but they deny that they were negligent.

On appeal Fairbury Hospital argues that no expert testimony was needed to show the Carle doctors' negligence and alternatively that the testimony presented by it was sufficient to establish a breach of the applicable standard of care. These questions require us to summarize the evidence, which we shall do here briefly.

Rueben Metz, 75 years old at the time of trial in September 1982, entered Fairbury Hospital on Sunday, March 25, 1979, because he had been having severe cramps and pains in his abdomen for several days; urination had provided some relief at one point during that period. His doctor, Nikhal Kothari, believed that his diverticulitis was acting up. On March 27 the catheter was inserted after Metz complained of abdominal pain and an inability to urinate. The catheter did not help, and the pain in Metz' abdomen grew worse during the next few days.

Kothari did not suspect that Metz was retaining urine—he thought that Metz' fluid imbalance was a result of a diverticular abscess. Kothari believed that Metz required a colon resection, and Kothari's final diagnosis, made when Metz left Fairbury Hospital around noon on March 29, was possible diverticular abscess with possible enlarged prostate.

Dr. Lansford, a gastroenterologist at Carle, first saw Metz in 1974 and at that time diagnosed a spastic colon. Lansford saw Metz several times in 1975, and in March of that year diagnosed diverticuli-

tis. Because it was not acute, Lansford treated Metz for a spastic colon.

Lansford saw Metz March 29, 1979, when Metz came to Carle from Fairbury Hospital. Lansford ordered X rays and a blood count. Metz' abdomen was flat but contained a mass about six inches in diameter where his bladder was. After reviewing some records from Fairbury, the test results, and his physical examination of Metz, Lansford diagnosed an abdominal abscess requiring immediate surgery. Lansford did not test the Foley catheter for proper placement; the test is to push the catheter in and then pull it out, until resistance is met. Drs. Shuck and Thow performed an exploratory laparotomy that night, March 29, and found that the catheter was in Metz' prostatic urethra; they did a cystostomy and inserted another catheter to drain the distended bladder. The surgeons did not find diverticulitis or diverticulosis.

Lansford later reviewed the fluid input and output records from Fairbury; he did not have these when Metz was admitted to Carle. The catheter was inserted at 4:30 p.m. March 27, and the following nurses' shift, 11 p.m. to 7 a.m., showed a urine flow of only 200 cubic centimeters. The relationship between a patient's fluid input and fluid output is important: A deficit in output—more fluid consumed than eliminated—may signify improper placement of the catheter.

Lansford said that improper placement of a Foley catheter is quite unusual. When examining Metz, Lansford saw no reason to check the placement of the catheter. Lansford said that no doctor checks the placement of a Foley catheter daily.

According to Lansford, the Fairbury records show that after the catheter was inserted, Metz was retaining fluid and developed a fever. Lansford said that having this information when the patient was admitted would not have changed his diagnosis. The withdrawal of a Foley catheter from its proper position is very unusual and very painful, unless the balloon has been deflated. Nothing in the record in this case shows that happening.

Fairbury Hospital then presented the evidence deposition of Dr. Shuck, taken May 28, 1981; Shuck operated on Metz with Dr. Thow and was a resident at Carle at that time. Shuck said that he was familiar with the acceptable standards of medical care in central Illinois. Shuck said that he and Thow examined Metz about 3 p.m. March 29. A Foley catheter was in Metz, and urine appeared to be draining from it at a normal rate. Shuck's provisional diagnosis when the patient was admitted was perforated diverticulitis, most likely in the sigmoid colon. The provisional diagnosis after the initial examination was

perforated sigmoid diverticulitis, with probable pelvic abscess formation. Shuck and Thow began surgery at about six or seven that night. Because Metz' output of urine before surgery was normal, Shuck thought that the catheter was in its correct position. During surgery, Metz continued to put out normal amounts of urine. Shuck acknowledged that surgery was not needed to determine whether the catheter was in its correct place but said that given the patient's normal flow of urine, improper placement of the catheter was unlikely. Metz' condition and symptoms did not suggest any problem with the catheter. An abscess in the colon can easily absorb 1,000 cubic centimeters of fluid in a day. Even 2,000 cubic centimeters of fluid could be absorbed by an abscess.

Shuck said in his evidence deposition that Metz' bladder obstruction had developed on its own—a result of prostatic hypertrophy—and was not caused by the improper placement of the catheter. Also, the position of a Foley catheter is checked by pushing it in first; if it does not move freely, then it is in the prostatic urethra. Pulling the catheter out, without also pushing it in, does not reveal anything. Improper placement would be evidence by nondrainage of urine, pain during urination, and perhaps blood in the urine. Shuck did not see any of these signs here; he saw a normal flow of urine.

Fairbury Hospital also presented admissions from the discovery deposition of Dr. Thow, one of the surgeons who operated on Metz at Carle. According to the deposition, Thow and Shuck opened Metz up, saw that his sigmoid colon was normal, and found the problem with the catheter. They then did a cystostomy. The surgeons did not check the fluid records from Fairbury Hospital before performing the operation; Metz was putting out about 50 cubic centimeters of urine per hour while at Carle. Without any output of urine, Thow would have done more preparation before surgery, including checking the position of the Foley catheter.

Fairbury Hospital argues on appeal that no expert testimony was needed for the jury to determine that the Carle doctors were negligent in misdiagnosing Metz' condition and, alternatively, that the testimony of Dr. Lansford, the evidence deposition of Dr. Shuck, and the admissions of Dr. Thow established the applicable standard of care and their breach of it.

■■ ■ Two elements of an action for medical malpractice are proof of the applicable standard of care and proof that it went unmet. This standard and its breach must be proved by expert testimony except in several types of cases; expert testimony, if it is needed, may be supplied by a defendant doctor (*Anderson v. Martzke* (1970), 131

Ill. App. 2d 61, 266 N.E.2d 137; *Comte v. O'Neil* (1970), 125 Ill. App. 2d 450, 261 N.E.2d 21). One exception to the requirement of expert testimony is when "the physician's conduct is so grossly negligent or the treatment so common that a layman could readily appraise it." (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256, 381 N.E.2d 279, 282.) Examples of negligent acts within a jury's common knowledge include "a sponge [left] in the abdomen, an instrument left behind, an X-ray burn." (*Comte v. O'Neil* (1970), 125 Ill. App. 2d 450, 454, 261 N.E.2d 21, 22.) Thus, the common knowledge exception permits the jury to determine on the basis of its own experience that a medical act or omission was negligent. Fairbury Hospital believes that the doctors at Carle could have easily diagnosed Metz' problem—the incorrectly positioned catheter—especially because his records at Fairbury Hospital showed a retention of fluids. Those records did not accompany Metz to Carle and were not requested by the Carle doctors.

 The expert evidence here failed to show the Carle doctors' breach of the applicable standard of care. For similar reasons, laymen could not have evaluated, on the basis of their own knowledge and experience, the Carle doctors' misdiagnosis or the circumstances surrounding it. That the problem with Metz turned out to have a simple cause is not determinative. The Carle doctors believed that Metz was eliminating a normal amount of urine, and they diagnosed an ailment consistent with his symptoms and medical history. Therefore, they did not test the placement of the catheter, which they reasonably assumed was in its correct position. The Carle doctors were faced with a patient in acute distress requiring quick treatment. Also, their failure to request the fluid records compiled at Fairbury Hospital cannot be judged negligent without proof of standards regarding transferred patients' medical records and charts. Thus, the allegations and circumstances in this case did not justify use of the common-knowledge exception, and the expert testimony before the trial court did not establish a breach of the applicable standard of care. The absence of this evidence justified the trial court in directing verdicts in favor of the third-party defendants. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Affirmed.

WEBBER, P.J., and MILLS, J., concur.