No. 2--07--0945    Filed: 12-23-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JANE STUDT and MICHAEL STUDT, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 03--L--271 |
| | ) | |
| SHERMAN HEALTH SYSTEMS, d/b/a | ) | |
| Sherman Hospital, | ) | Honorable |
| | ) | Donald J. Fabian, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Sherman Health Systems (doing business as Sherman Hospital), timely appeals from a jury verdict in favor of plaintiffs, Jane Studt and Michael Studt, on their claims for institutional negligence and vicarious liability for the professional negligence of defendant's doctors in failing to diagnose Jane's appendicitis. Defendant's lone argument on appeal is that the trial court tendered an erroneous jury instruction regarding the applicable standard of care for professional negligence. For the reasons that follow, we affirm the trial court's decision.

As a threshold issue, plaintiffs argue that we need not reach defendant's jury instruction argument. Plaintiffs observe that the jury was presented with three theories of liability--defendant's institutional negligence, and defendant's vicarious liability for the professional negligence of each of the two treating physicians--and issued a general verdict finding defendant liable. Plaintiffs offer

that, even if the professional negligence instruction was faulty, we can sustain the jury's verdict based on evidence of institutional negligence.

As plaintiffs note, when there is a general verdict after more than one theory has been presented to a jury, the verdict will be upheld on appeal if there was sufficient evidence to sustain any of the theories presented. 735 ILCS 5/2--1201(d) (West 2006); Dillon v. Evanston Hospital, 199 Ill. 2d 483, 492 (2002). Plaintiffs characterize the evidence offered to prove institutional negligence as "more than ample." We disagree. Jane was initially treated by one physician, Dr. Apiwat Ford, who examined her and ordered tests, but, at the end of his shift, her care was transferred to a second physician, Dr. Timothy Turner, who received the test results, examined her, and discharged her without diagnosing her appendicitis. Plaintiffs asserted at trial that defendant was negligent because it knew that Ford had a practice of taking illegible notes, yet defendant allowed the practice to continue. According to plaintiffs, when Ford's shift ended and Turner assumed Jane's care, "the illegible medical record *** failed to provide essential information to" Turner. That may very well be true, but the testimony at trial indicated that Ford had another method of conveying patient information to other doctors: he had a practice of having a face-to-face discussion of all patients with the doctor who succeeded him. In fact, Turner testified that Ford informed him of Jane's status at the beginning of Turner's shift. Plaintiffs elicited no evidence of any deficiency in this oral communication that had any effect on Jane's care. We therefore reject plaintiffs' argument that we can affirm the jury's verdict based solely on the evidence of institutional negligence, and we consider defendant's argument on its merits.[1]

---

[1]Plaintiffs also argue that defendant has forfeited opposition to the argument regarding the institutional-negligence claim, because defendant did not oppose the argument below. We disagree.

No. 2--07--0945

A trial court is required to use an Illinois pattern jury instruction when it is applicable to a civil case, unless the court determines that the instruction does not accurately state the law. 177 Ill. 2d R. 239(a); York v. Rush-Presbyterian-St. Luke's Medical Center, 222 Ill. 2d 147, 204 (2006). The trial court here thus tendered an instruction modeled on the Illinois pattern instruction for professional negligence:

" 'Professional negligence' by a doctor is the failure to do something that a reasonably careful doctor would do, or the doing of something that a reasonably careful doctor would not do, under circumstances similar to those shown by the evidence.

The phrase 'violation of the standard of care' means the same thing as professional negligence.

To determine what the standard of care required in this case, you must rely upon opinion testimony from qualified witnesses[,] evidence of professional standards, evidence of by-laws, rules, regulations, policies and procedures and other evidence presented in this case. You must not attempt to determine this question from any personal knowledge you have.

---

Defendant argued in its posttrial motion below that the jury instruction was erroneous and that it tainted the jury's verdict. Plaintiffs could have argued in their response that the verdict could be sustained on other grounds; if they had, defendant could have replied by attacking the institutional-negligence claim. Plaintiffs, however, did not raise the argument that the institutional-negligence claim could independently justify the verdict. If anyone has forfeited this issue, it is plaintiffs, not defendant.

The law does not say how a reasonably careful doctor would act under these circumstances. That is for you to decide."

See Illinois Pattern Jury Instructions, Civil, No. 105.01 (2006) (hereinafter IPI Civil (2006)).

The issue of whether a jury instruction is an accurate statement of the law is reviewed de novo. Thornton v. Garcini, 364 Ill. App. 3d 612, 618-19 (2006). Defendant asserts that the above jury instruction misstates the law in three ways.

First, defendant argues that the above instruction misstates the law because it defines professional negligence in terms of a "reasonably careful doctor" standard, instead of the previous "reasonably well-qualified doctor" standard. See IPI Civil (2000) No. 105.01 (prior version of the pattern instruction). However, after briefing was finished in this appeal, we granted plaintiffs' motion to cite LaSalle Bank v. C/HCA Development Corp., 384 Ill. App. 3d 806 (2008), as additional authority. (In its response to plaintiffs' motion to cite LaSalle Bank, defendant did not contest the holding of the case but rather emphasized that its argument on appeal was primarily directed at another point.) In LaSalle Bank, the First District held that the "reasonably careful" language from IPI Civil (2006) No. 105.01 accurately states the law. See LaSalle Bank, 384 Ill. App. 3d at 816-17 (" 'the standard of care for all professionals is "the use of the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances" ' "), quoting Loman v. Freeman, 229 Ill. 2d 104, 119 (2008), quoting Advincula v. United Blood Services, 176 Ill. 2d 1, 23 (1996). We agree with the holding in LaSalle Bank and therefore reject defendant's argument that the "reasonably careful" language in IPI Civil (2006) No. 105.01 renders the instruction erroneous.

Defendant's second basis for arguing that the above instruction is unclear is that, by combining the "reasonably careful doctor" language with the statement that "[t]he law does not say how a reasonably careful physician would act under these circumstances. That is for [the jury] to decide," the instruction "encourages the jury to decide the case based on [its] own view of what is 'reasonable.' " We disagree. Just before the portion of the instruction defendant emphasizes, the instruction tells jurors that they "must not attempt to determine [the standard of care] from any personal knowledge." Thus, contrary to defendant's argument, the instruction explicitly directs jurors not to decide the case based on their own views of what is reasonable. Further, the instruction lists the evidentiary sources the jury may consider in reaching its conclusion on the standard of care, and the jurors' personal views are not among them. Accordingly, to the extent defendant's excerpts may be considered ambiguous in isolation and removed from the remainder of the instruction, the full context of the instruction leaves no question that jurors should determine the standard of care based on the evidence, and not based on their personal knowledge.

Defendant essentially interprets the instruction's statement that "[t]he law does not say how a reasonably careful doctor would act under these circumstances" as a statement that the law provides no guidance and thus leaves jurors to their own devices to determine the professional standard of care. However, the true import of that sentence is that the law does not prescribe the standard of care under the unique set of circumstances that every trial presents, and the duty to determine the standard of care falls to the jury, which, according to the remainder of the instruction, must do so based on the evidence presented and not based on personal knowledge. We reject defendant's interpretation of the instruction, and we therefore reject its argument that its interpretation demonstrates that the instruction misstates the law.

We recognize that our position on this issue puts us at odds with the First District, which recently held that modifications to current IPI Civil (2006) No. 105.01 "are necessary to prevent jury confusion." Matarese v. Buka, No. 1--06--2276, slip op. at 15 (October 31, 2008). Among the problems the decision in Matarese identified with the instruction was that "it initially tells jurors not to determine the standard of care from their personal knowledge, but then seems to contradict itself by adding that the law does not say how a reasonably careful professional would act under the circumstances and that is for the jurors to decide." Matarese, slip op. at 14.[2] For the reasons stated above, we disagree with Matarese on this point, and we decline to follow it.

Defendant's final, and most earnest, challenge to the jury instruction is that it misstates the law by inviting the jury to decide the professional standard of care by relying on "opinion testimony from qualified witnesses, evidence of professional standards, evidence of by-laws, rules, regulations, policies and procedures and other evidence presented." According to defendant, in a professional-negligence action (as opposed to an action for ordinary negligence), a jury is limited to considering only expert testimony in assessing the applicable standard of care, and it may not consult other evidentiary sources. As a remedy for its concern, defendant urges that we discard the above-quoted instruction in favor of the former version of the pattern instructions, which provided as follows:

> "In providing professional services to _____, a _____ must possess and apply the
>
> knowledge and use the skill and care ordinarily used by a reasonably well-qualified _____

---

[2]The decision in Matarese identified two additional problems with IPI Civil (2006) No. 105.01. See Matarese, slip op. at 14. However, because defendant does not argue that either of those problems forms a basis for reversal here, we express no opinion on those aspects of the First District's holding.

[practicing in the same or similar localities] under the circumstances similar to those shown by the evidence. A failure to do so is professional negligence.

[The only way in which you may decide whether (a) (any) defendant possessed and applied the knowledge and used the skill and care which the law required of him is from (expert testimony) (and) (or) (evidence of professional standards or conduct) presented in the trial. You must not attempt to determine this question from any personal knowledge you may have.]" (Brackets in original.) IPI Civil (2000) No. 105.01.

The first, and most obvious, problem with defendant's position is that the former version of the pattern instruction, which defendant argues is accurate, allowed juries to consider expert testimony "(and) (or) (evidence of professional standards or conduct)." In fact, the notes on use accompanying IPI Civil (2000) No. 105.01 indicated that "[t]he parenthetical phrase 'evidence of professional standards or conduct' *** may be used in situations where the proper standard of care may be proven by other than expert testimony." IPI Civil (2000) No. 105.01, Notes on Use. Thus, the prior instruction defendant advocates, like the current instruction defendant criticizes, contemplated that juries could consider evidence beyond expert testimony in determining the professional standard of care.

Beyond this inconsistency in defendant's argument, we disagree with defendant's position that a jury is limited to considering only expert testimony in assessing the professional standard of care. To support its position, defendant cites to several cases that hold that a jury charged with determining the professional standard of care normally must be presented with expert testimony on which to base its determination.[3] See Snelson v. Kamm, 204 Ill. 2d 1, 42 (2003) ("In medical

[3]Although defendant implies that there is an absolute requirement for expert testimony in all

negligence cases against hospitals based on vicarious liability for the conduct of its nurses, it is necessary for a plaintiff to present expert testimony to establish the standard of care and that its breach was the cause of the plaintiff's injury"); Jones, 191 Ill. 2d at 295 ("Expert testimony is usually required in a case of professional negligence" and is "necessary to establish both (1) the standard of care expected of the professional and (2) the professional's deviation from the standard"); Advincula, 176 Ill. 2d at 24 ("in professional negligence cases, unlike negligence actions in general, the plaintiff bears a burden to establish the standard of care through expert witness testimony"); Dolan v. Galluzzo, 77 Ill. 2d 279, 282 (1979) ("In medical malpractice suits, the plaintiff must establish the standard of care through expert testimony"); Walski v. Tiesenga, 72 Ill. 2d 249, 256 (1978) ("Generally, expert testimony is needed to support a charge of malpractice because jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of the physician").

However, the idea that expert testimony is usually necessary does not mean that additional evidence is impermissible. In fact, some of the cases on which defendant relies actually explicitly provide that, in addition to expert testimony, jurors may also consider other relevant evidence regarding the standard of professional care. For example, in Advincula, the supreme court referred

_____

professional-negligence cases, we note that our supreme court has stated that "there are exceptions to the requirement of expert testimony in professional negligence cases." Jones v. Chicago HMO Ltd. of Illinois, 191 Ill. 2d 278, 296 (2000) (listing exceptions); see also Advincula, 176 Ill. 2d at 24 ("In instances *** where the professional's conduct is so grossly negligent or the treatment so common that a layperson could readily appraise it, no professional expert testimony or other such relevant evidence is required").

to the professional standard of care being established by "proofs in the form of expert witness testimony or other evidence of professional standards" (emphasis added). Advincula, 176 Ill. 2d at 33. In Walski, the supreme court was even more explicit; it cited, with approval, a previous case in which it held evidence of a drug manufacturer's instructions to suffice, even in the absence of expert testimony, as evidence regarding the applicable professional standard of care. Walski, 72 Ill. 2d at 258, citing Ohligschlager v. Proctor Community Hospital, 55 Ill. 2d 411 (1973).

At oral argument, defendant added another nuance to the above argument. Defendant agreed that evidence beyond expert testimony is admissible in a professional-negligence action, but it contended that the additional evidence is not independently admissible but instead must be admitted through an expert's testimony. Defendant asserted that the jury instruction here was defective for failing to account for this limitation. However, under the facts of the current case, we need not reach this issue. A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant. Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 274 (2002). Defendant here has not identified (either in its brief or when pressed at oral argument) any professional-standard-of-care evidence introduced at this trial that was not introduced via expert testimony. Because defendant has not directed us to any evidence that could have caused it prejudice in light of the jury instruction, we will not reverse the jury's verdict on defendant's contention that the jury instruction should have explained the limits on evidence of the professional standard of care.[4]

_____

[4]We further note that the previous version of the pattern instruction, which defendant argues is appropriate, also does not contain an explanation that other evidence is admissible only if introduced via expert testimony. If that limitation must be expressed in the jury instruction on

Based on the above discussion, we reject defendant's contention that the jury's verdict must be reversed because IPI Civil (2006) No. 105.01 misstates the law.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

BOWMAN and GROMETER, JJ., concur.

---

professional negligence, then the instruction defendant advocates is equally flawed. (Defendant seemed to assert at oral argument that the prior instruction was rendered appropriate because courts interpreted it as requiring evidence of professional negligence to be introduced via expert testimony. If that is true, we see no reason why the current instruction cannot receive a similar saving interpretation.)