# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Studt v. Sherman Health Systems*, 2011 IL 108182

---

| | |
|---|---|
| Caption in Supreme Court: | JANE STUDT *et al.*, Appellees, v. SHERMAN HEALTH SYSTEMS, d/b/a Sherman Hospital, Appellant. |
| Docket No. | 108182 |
| Filed | June 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Illinois Pattern Jury Instructions, Civil, No. 105.01 (2006) does not accurately state Illinois law as to, first, the type of evidence a jury may consider in determining whether a physician has complied with the standard of care and, second, the standard of care for evaluating the reasonableness of a physician's conduct. |
| Decision Under Review | Appeal from the Appellate Court for the Second District, reported at 387 Ill. App. 3d 401; heard in that court on appeal from the Circuit Court of Kane County, the Hon. Donald J. Fabian, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Hugh C. Griffin, Stevie A. Starnes and Jacob Z. Goldstein, of Hall, Prangle & Schoonveld, LLC, of Chicago, and John E. Norton and Thomas J. Long, of Norton, Mancini & Weiler, of Wheaton, for appellant.

Kenneth C. Chessick, John W. Fisk and Julie A. Filimonov, of Schaumburg, for appellees.

David S. Osborne, of Lindsay, Rappaport & Postel, LLC, and Robert Marc Chemers, of Pretzel & Stouffer, Chtrd., all of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Bruce R. Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices

CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

Justice Karmeier specially concurred, with opinion

# OPINION

¶ 1    In this appeal, we address whether Illinois Pattern Jury Instructions, Civil, No. 105.01 (2006) (IPI Civil (2006) No. 105.01) correctly states Illinois law on the standard of care in professional negligence cases. Plaintiff, Jane Studt, filed a medical malpractice action in the circuit court of Kane County against defendant, Sherman Health Systems, doing business as Sherman Hospital. Jane alleged the Hospital's emergency room doctors failed to diagnose her appendicitis. Jane's husband brought a consortium claim.

¶ 2    Over the Hospital's objection, the circuit court instructed the jury with IPI Civil (2006) No. 105.01. The jury returned a verdict against the Hospital. The appellate court affirmed the verdict, holding that IPI Civil (2006) No. 105.01 correctly states the law. 387 Ill. App. 3d 401. This court allowed the Hospital's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We hold that IPI Civil (2006) No. 105.01 does not accurately state Illinois law, but affirm the appellate court judgment upholding the jury verdict.

¶ 3                                    I. BACKGROUND

¶ 4    On October 14, 2001, Jane Studt visited the Hospital's emergency room with abdominal

pain. The emergency room physicians failed to diagnose her appendicitis and sent her home with prescriptions to treat a urinary tract infection and pain. Two days later, Jane's regular physician admitted her to the Hospital and ordered a surgical consult. Jane's ruptured and gangrenous appendix was surgically removed. Jane subsequently required multiple hospitalizations and surgeries for recurrent infections and peritonitis.

¶ 5    On May 22, 2003, Jane and her husband filed suit against the Hospital. Plaintiffs alleged institutional negligence and vicarious liability. It is undisputed that, at trial, only experts testified on the standard of care. The trial evidence is not at issue in this appeal. We will not, therefore, recite the trial testimony.

¶ 6    At the conclusion of the evidence, the circuit court held a jury instruction conference. Defense counsel objected to giving IPI Civil (2006) No. 105.01. Defense counsel instead tendered an instruction based on the prior version, Illinois Pattern Jury Instructions, Civil, No. 105.01 (2005) (IPI Civil (2005) No. 105.01).

¶ 7    One difference between the two instructions is that IPI Civil (2005) No. 105.01 defined standard of care in terms of a "*reasonably well-qualified*" professional, while IPI Civil (2006) No. 105.01 uses the terms "*reasonably careful*." (Emphases added.) IPI Civil (2006) No. 105.01, cmt., at 279. Defense counsel submitted a memorandum of law urging that IPI Civil (2006) No. 105.01 is an incorrect statement of Illinois law on the standard for professional negligence. Specifically, the Hospital argued:

> "In exchanging 'possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well qualified' professional for 'reasonably careful,' the I.P.I. Committee has essentially invited jurors to apply their own reasonable person standard rather than the professional standard as shown by the evidence."

¶ 8    The Hospital also argued that the language of IPI Civil (2006) No. 105.01 suggesting that professional negligence can be proven through evidence of bylaws, rules, regulations, policies, procedures, evidence of community practice and other sources is misleading. According to the Hospital, this evidence is insufficient to establish professional negligence absent competent expert opinion testimony. The trial court overruled the defense objections and gave plaintiffs' instruction based on IPI Civil (2006) No. 105.01.

¶ 9    The Hospital did not submit special interrogatories to the jury and the jury returned a general verdict against the Hospital. The circuit court denied the Hospital's posttrial motion for a new trial and entered judgment on the jury's verdict.

¶ 10    The Hospital's sole argument on appeal to the appellate court was that plaintiffs' instruction based on IPI Civil (2006) No. 105.01 is an incorrect statement of Illinois law and constituted reversible error. The appellate court affirmed the trial court's judgment, holding that the "reasonably careful" language in IPI Civil (2006) No. 105.01 accurately states the law. 387 Ill. App. 3d at 404. The appellate court determined that the complete language of IPI Civil (2006) No. 105.01 leaves no question that jurors should determine the standard of care based on the evidence and not on their personal knowledge. 387 Ill. App. 3d at 404. The appellate court subsequently denied the Hospital's petition for rehearing. This court allowed the Hospital's petition for leave to appeal. Ill. S. Ct. R. 315.

-3-

¶ 11                             II. ANALYSIS

¶ 12        The Hospital's sole contention in this appeal is that IPI Civil (2006) No. 105.01 does not accurately state Illinois law in three ways. First, the Hospital argues the instruction does not accurately state the type of evidence the jury may consider in determining whether a physician has complied with the standard of care. Second, the Hospital contends the instruction fails to provide the jury with the standard of care for evaluating the reasonableness of a physician's conduct. Finally, according to the Hospital, the instruction erroneously instructed the jury on the use of personal knowledge in determining the standard of care.

¶ 13        Generally, a trial court's decision to grant or deny an instruction is reviewed for abuse of discretion. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). "The standard for determining an abuse of discretion is whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law." *Dillon*, 199 Ill. 2d at 505. When the question is whether the applicable law was conveyed accurately, however, the issue is a question of law, and our standard of review is *de novo*. *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 170 (2008).

¶ 14        Supreme Court Rule 239(a) requires that "[w]henever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 239(a) (eff. Jan. 1, 1999). A non-IPI instruction may be used if the court determines that the pattern instruction does not accurately state the law. Ill. S. Ct. R. 239(b).

¶ 15        The trial court gave pattern instruction IPI Civil (2006) No. 105.01 for professional negligence cases, but the Hospital argued that it is not a correct statement of Illinois law. We now review whether IPI Civil (2006) No. 105.01 is a correct statement of Illinois law.


¶ 16                 Whether IPI Civil (2006) No. 105.01 Accurately States Illinois
                       Law on the Type of Evidence the Jury May Consider in
                                Determining Professional Negligence

¶ 17        The Hospital argues that IPI Civil (2006) No. 105.01 does not accurately state Illinois law on the type of evidence the jury may consider in determining whether a physician has complied with the standard of care. At the time of trial, IPI Civil (2006) contained an instruction applicable to claims for professional negligence. IPI Civil (2006) No. 105.01 provides:

> "105.01 Professional Negligence–Duty
>
> 'Professional negligence' by a _____ [specialist/doctor/nurse/therapist/health care provider/accountant/lawyer/other] is the failure to do something that a reasonably careful _____ [specialist/doctor/nurse/therapist/health care provider/accountant/lawyer/other] [practicing in the same or similar localities] _____

-4-

[specialist/doctor/nurse/therapist/health care provider/accountant/lawyer/other] would do, or the doing of something that a reasonably careful _____ [specialist/doctor/nurse/ therapist/health care provider/accountant/lawyer/ other] would not do, under circumstances similar to those shown by the evidence.

The phrase ['violation of the standard of care'] ['deviation from the standard of practice'] means the same thing as 'professional negligence.'

[To determine what the standard [of care] [of practice] required in this case, you must rely upon (opinion testimony from qualified witnesses) (evidence of professional standards) (evidence of by-laws/rules regulations/policies/procedures) (evidence of community practice) (and other sources). You must not attempt to determine this question from any personal knowledge you have.] The law does not say how a reasonably careful _____ [specialist/doctor/nurse/therapist/health care provider/accountant/lawyer/other] would act under these circumstances. That is for you to decide." IPI Civil (2006) No. 105.01.

¶ 18    According to the Hospital, a jury is limited to considering expert testimony and, in some instances, evidence of professional standards or conduct in deciding whether a physician's conduct met the standard of professional care. The Hospital submits that IPI Civil (2006) No. 105.01 is a misstatement of law because it erroneously instructs that the jury may consider a broad array of other evidentiary sources including bylaws, rules, regulations, policies, procedures, community practice and other evidence. The Hospital argues that these other evidentiary sources can be properly considered only in institutional negligence claims against a hospital, not claims based on vicarious liability for professional negligence. The Hospital states that IPI Civil (2006) No. 105.01 essentially eliminated the distinction between professional negligence and institutional negligence. Consequently the Hospital claims that, under IPI Civil (2006) No. 105.01, there is no limit on what evidence the jury may consider in deciding whether the emergency room doctors committed professional negligence.

¶ 19    Plaintiffs argue that the Hospital forfeited any objection to the language referencing "evidence of professional standards, evidence of bylaws, rules, regulations, policies and procedures and other evidence presented" by failing to object to it during the jury instruction conference. "A party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008). We note, however, that the Hospital objected in its written memorandum. Accordingly, the Hospital has not forfeited its objection.

¶ 20    We now consider whether IPI Civil (2006) No. 105.01 accurately states Illinois law on the type of evidence the jury may consider in determining whether a physician has complied with the standard of care. "[I]n professional negligence cases, *** the plaintiff bears a burden to establish the standard of care through expert witness testimony." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 24 (1996). This requirement is based on the simple fact that without expert testimony, jurors, not skilled in the profession, are not equipped to judge the professional's conduct. *Advincula*, 176 Ill. 2d at 24, 33; *Walski v. Tiesenga*, 72 Ill. 2d 249,

256 (1978). Courts have recognized two exceptions to this rule: where the professional's conduct is so grossly negligent, or the procedure so common, that the jury can readily appraise it without the need for expert testimony. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 296 (2000).

¶ 21 In contrast to professional negligence, institutional negligence does not necessarily require expert testimony and may be established by a wide array of evidence. As this court explained in the context of an institutional negligence claim against a hospital:

"[A] modern hospital *** is an amalgam of many individuals not all of whom are licensed medical practitioners. Moreover, it is clear that at times a hospital functions far beyond the narrow sphere of medical practice. Accordingly, while various medical judgments are necessarily a daily part of hospital administration, they do not constitute the entirety of a hospital's function, as is the case with single medical practitioners. Thus, we deem it appropriate to the diversity inherent in hospital administration that a broad range of evidence be available to establish the applicable standard of care." *Greenberg v. Michael Reese Hospital*, 83 Ill. 2d 282, 293 (1980) (citing *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326 (1965)).

In *Advincula*, this court compared the role of expert testimony in professional negligence cases and in institutional negligence cases, stating:

"[I]t is the inherent diversity in hospital administration which *permits* a broad range of evidence, including expert witness testimony, administrative rules and regulations, to establish the reasonableness standard of care, but does not call necessarily for such proofs. This relationship contrasts with that between professional conduct and proofs relevant to establish the appropriate professional standard of care; such proofs in the form of expert witness testimony or other evidence of professional standards are generally required because they are generally necessary to evaluate conduct which is likely arcane to lay jurors." (Emphasis in original.) *Advincula*, 176 Ill. 2d at 33.

¶ 22 In *Jones*, this court again addressed the difference between institutional negligence and professional negligence, and the proofs permitted or required in each type of action. Tracing the development of case law considering the institutional negligence of hospitals, we concluded that *Darling* and its progeny have firmly established that the standard of care applicable to a hospital may be proved by a number of evidentiary sources, including, but not limited to, hospital bylaws, statutes, accreditation standards, custom and community practice, but that expert testimony is not always required. *Jones*, 191 Ill. 2d at 296-98.

¶ 23 The distinction between the evidence required to establish professional negligence versus institutional negligence, recognized and preserved by this court in cases like *Advincula* and *Jones*, has been completely eliminated by the 2006 IPIs. Under the 2006 instructions, the evidence that a jury may consider in determining the standard of care in professional negligence cases is identical to the evidence that a jury may consider in institutional negligence cases. Compare IPI Civil (2006) No. 105.01 (professional negligence), with IPI Civil (2006) No. 105.03.01 (institutional negligence). The necessity of expert testimony in professional negligence cases is not reflected in the 2006 professional negligence IPI. Bylaws, rules, regulations, policies, and procedures are now on equal footing with expert

testimony in judging a professional's conduct. Thus, under the 2006 IPIs, the possibility exists that a medical doctor could be found liable for professional negligence based only on the violation of a hospital rule or regulation. This is not the law in Illinois.

¶ 24　　We recognize, however, that the 2005 professional negligence IPI already permitted a professional standard of care to be established through nonexpert testimony, *i.e.*, "evidence of professional standards or conduct." IPI Civil (2005) No. 105.01. The notes on use to the 2005 IPI cite three cases in support: *Ohligschlager v. Proctor Community Hospital*, 55 Ill. 2d 411 (1973), *Metz v. Fairbury Hospital*, 118 Ill. App. 3d 1093 (1983), and *Smith v. South Shore Hospital*, 187 Ill. App. 3d 847 (1989).

¶ 25　　In *Ohligschlager*, we held that the drug manufacturer's explicit instructions for the proper administration and dosing of the drug, and warning of the hazards accompanying improper administration, provided proof of the professional standards applicable to the defendant doctor "which would ordinarily be shown by expert medical testimony." *Ohligschlager*, 55 Ill. 2d at 417. In *Metz*, the appellate court held that the expert testimony, provided by the defendant doctors, did not establish a breach of the standard of care. *Metz*, 118 Ill. App. 3d at 1098. In *Smith*, the appellate court noted that certain professional guides, such as hospital licensing regulations, accreditation standards, bylaws and instructions for the use of drugs, may serve as a substitute for expert testimony, but cited only *Darling*, an institutional negligence case, and *Ohligschlager*. *Smith*, 187 Ill. App. 3d at 856.

¶ 26　　This trio of cases provides, at most, only limited support for the use of evidence other than expert testimony in a professional negligence case. Thus the "evidence of professional standards or conduct" language found in the 2005 IPI should not be viewed as an alternative to expert testimony but, instead, only as a limited exception.

¶ 27　　Notably, the 2006 professional negligence IPI text offers no case law or any other justification for expanding the nonexpert evidentiary sources applicable to a professional negligence action. Nor does the text hint at any reason for placing expert testimony on a par with bylaws, rules, regulations, policies and procedures. Moreover, cases such as *Advincula* and *Jones* firmly establish that while expert testimony is *permitted* in institutional negligence cases, it is *required* in professional negligence cases. Accordingly, we determine that the 2006 IPI effects a significant and unwarranted departure from the established law governing professional negligence cases.

¶ 28　　Because the 2006 professional negligence IPI does not accurately state the law, the trial court erred in giving the instruction to the jury. See Ill. S. Ct. R. 239(a). Reversal is warranted if the error resulted in "serious prejudice" to the Hospital's right to a fair trial. *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). See also *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 274 (2002) ("reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant"). Review of the trial testimony indicates that the Hospital did not suffer serious prejudice.

¶ 29　　The Hospital was defending against a professional negligence claim (vicarious liability for the alleged professional negligence of its emergency room doctors) and an institutional negligence claim (the alleged failure to assure adequate communication between its doctors).

Evidence of the standard of care supporting both theories of recovery was introduced through expert testimony. Though the Hospital's rules and regulations for medical staff were also admitted into evidence, the rules and regulations were not held out as establishing the standard of care for emergency room physicians. The rules and regulations merely buttressed the expert testimony that patient care was compromised through the emergency room doctors' failure to communicate adequately with each other and the Hospital's failure to assure adequate communication. Reversal is not warranted.

¶ 30    In another case, however, with different proofs and theories of recovery, serious prejudice could very well result where a jury is instructed to consider the same evidence in deciding the distinct claims of professional negligence and institutional negligence, particularly where expert testimony is lacking. In such cases, as noted above, a jury could find a physician liable for professional negligence based only on the violation of a hospital rule or regulation.

¶ 31    For the foregoing reasons, we hold that the version of IPI Civil (2006) No. 105.01 given at trial constituted error because it did not limit the jury's consideration to expert testimony. However, we hold that reversal is not warranted because the error did not result in "serious prejudice" to the Hospital's right to a fair trial.

¶ 32    Whether IPI Civil (2006) No. 105.01 Provides the Proper Standard
of Care in Professional Negligence Cases

¶ 33    The Hospital also challenges another change in the professional negligence IPI. While the 2005 version states that the professional "must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified [professional]" (IPI Civil (2005) No. 105.01), the 2006 version states that professional negligence "is the failure to do something that a reasonably careful [professional] would do, or the doing of something that a reasonably careful [professional] would not do, under circumstances similar to those shown by the evidence" (IPI Civil (2006) No. 105.01).

¶ 34    As explained in the Restatement (Second) of Torts, the skill a professional must exercise is "that special form of competence which is not part of the ordinary equipment of the reasonable man, but which is the result of acquired learning, and aptitude developed by special training and experience." Restatement (Second) of Torts §299A, cmt. a, at 73 (1965). The 2006 professional negligence IPI is incomplete because it contains no reference to the professional's knowledge, skill, and care (or knowledge, skill, and ability) and, therefore, does not accurately state Illinois law as to the standard of care applicable in professional negligence actions. See *Loman v. Freeman*, 229 Ill. 2d 104, 119 (2008); *Jinkins v. Lee*, 209 Ill. 2d 320, 336 (2004); *Jones*, 191 Ill. 2d at 295; *Advincula*, 176 Ill. 2d at 23; *Matarese v. Buka*, 386 Ill. App. 3d 176, 184-85 (2008). Accordingly, we hold that the trial court erred when it instructed the jury in accordance with the 2006 IPI. See Ill. S. Ct. R. 239(a). As noted earlier, reversal is warranted if the error resulted in serious prejudice to the Hospital's right to a fair trial. See *Heastie*, 226 Ill. 2d at 543. Based on the expert testimony presented at trial by both parties, the arguments of counsel, the overall manner of the trial, and the jury instructions as a whole, we cannot conclude that the incompleteness in the professional negligence instruction requires reversal. Notably, Dr. Frank Baker, the plaintiff's emergency

medicine expert, testified extensively as to the role of the emergency room physician in general, the role of the Hospital's two emergency room doctors who evaluated the plaintiff, and how their conduct violated the standard of care. The jury was adequately informed, even if not formally instructed, that the Hospital's emergency room physicians were required to use the same degree of knowledge, skill, and ability normally possessed by emergency room physicians under similar circumstances.

¶ 35        Whether IPI Civil (2006) No. 105.01 Erroneously Instructs the Jury
                           on the Use of Personal Knowledge

¶ 36        The Hospital further argues that IPI Civil (2006) No. 105.01 gives the jury inconsistent and confusing direction on the use of personal knowledge in determining the standard of care. According to the Hospital, the instruction erroneously combines the "reasonably careful doctor" language with the statement that "[t]he law does not say how a reasonably careful physician would act under these circumstances. That is for [the jury] to decide." The Hospital contends that this instruction encourages jurors to decide the case based on their own personal view of what is reasonable.

¶ 37        In this case, the appellate court noted that two appellate decisions conflict on the correctness of this portion of IPI Civil (2006) No. 105.01. 387 Ill. App. 3d at 405. In *LaSalle Bank, N.A. v. C/HCA Development Corp.*, 384 Ill. App. 3d 806 (2008), the appellate court held that the "reasonably careful" language accurately states the law because " 'the standard of care for all professionals is "the use of the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances." ' " *LaSalle Bank*, 384 Ill. App. 3d at 816-17 (quoting *Loman*, 229 Ill. 2d at 119, quoting *Advincula*, 176 Ill. 2d at 23). In contrast, the appellate court in *Matarese v. Buka*, 386 Ill. App. 3d 176 (2008), held that additional modifications to IPI Civil (2006) No. 105.01 were necessary to prevent jury confusion. Specifically, *Matarese* determined that the instruction "initially tells jurors not to determine the standard of care from their personal knowledge, but then seems to contradict itself by adding that the law does not say how a reasonably careful professional would act under the circumstances and that is for the jurors to decide." *Matarese*, 386 Ill. App. 3d at 185. The appellate court in this case disagreed with *Matarese* and followed *LaSalle Bank*.

¶ 38        We must determine whether, "taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law." *Dillon*, 199 Ill. 2d at 505. A brief examination of the instruction answers the question on the use of personal knowledge. Importantly, just before the language the Hospital finds objectionable, the instruction states that jurors "must not attempt to determine [the standard of care] from any personal knowledge." Thus, IPI Civil (2006) No. 105.01 expressly instructs the jurors that they are not to decide professional negligence based on their own views of how a reasonably careful physician would act under the circumstances. Additionally, personal knowledge is not listed as an evidentiary source the jury may consider.

¶ 39        We therefore reject the Hospital's argument that IPI Civil (2006) No. 105.01 gives the jury inconsistent and confusing direction on the use of personal knowledge in determining

the standard of care. Given our determination, it is unnecessary to address plaintiffs' alternative contention that their institutional negligence claim alone supports the jury's verdict.

¶ 40                                    III. CONCLUSION

¶ 41    For the foregoing reasons we hold that the 2006 professional negligence IPI does not accurately state Illinois law as to the evidence a jury may consider and the applicable standard of care, but, nevertheless, uphold the appellate court judgment affirming the jury verdict.

¶ 42    Affirmed.

¶ 43    JUSTICE KARMEIER, specially concurring:

¶ 44    I agree with the result reached by the majority. The judgment of the circuit court was properly affirmed by the appellate court. I also agree with the majority that the use of IPI Civil (2006) No. 105.01 in this case was not reversible error. I write separately because I would reach that conclusion for different reasons than those expressed by my colleagues.

¶ 45    As the majority correctly points out, the sole issue presented by Sherman Hospital on this appeal is that IPI Civil (2006) No. 105.01 does not accurately state Illinois law applicable to claims alleging professional negligence. The record clearly shows, however, that professional negligence was not the only theory under which plaintiffs sought recovery from Sherman Hospital. In addition to their professional negligence claim, which asserted that Sherman Hospital should be held vicariously liable for the negligence of the emergency doctors who failed to diagnose Mrs. Studt's appendicitis, plaintiffs also sought recovery from Sherman Hospital based on the direct institutional negligence of the hospital itself.

¶ 46    The jury was instructed on both theories using the versions of the IPI civil instruction at issue in this case. Sherman Hospital does not contend that the instructions were problematic with respect to plaintiffs' institutional negligence claim. To the extent that the instructions are claimed to be defective, the flaws pertain exclusively to the claim premised on the professional negligence of the emergency room doctors.

¶ 47    Sherman Hospital faces a formidable obstacle in presenting this issue on appeal because the jury returned a general verdict. It did not specify on which of the two theories it relied in finding the hospital negligent, and no special interrogatories were requested to clarify the basis for the jury's verdict. The reason this is problematic for Sherman Hospital is that our Code of Civil Procedure expressly provides that where, as here, multiple grounds of recovery "are pleaded in support of the same claim, whether in the same or different counts, an entire verdict rendered for that claim shall not be set aside or reversed for the reason that any ground is defective, if one or more of the grounds is sufficient to sustain the verdict." 735 ILCS 5/2–1201(d) (West 2006). Similarly our court has held that when "there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the defendant, having failed to request

special interrogatories, cannot complain." *Witherell v. Weimer*, 118 Ill. 2d 321, 329 (1987).

¶ 48   In light of this authority, any problem regarding the propriety of the jury instruction on plaintiffs' professional negligence count is immaterial, as a matter of law, unless Sherman Hospital can establish that there was not sufficient evidence to sustain a verdict based on plaintiffs' alternative count asserting institutional negligence. Plaintiffs argued vigorously in the appellate court that their institutional negligence claim alone would, in fact, be sufficient to support the jury's verdict. Although the appellate court rejected plaintiffs' argument, it did so, in part, under the belief that plaintiffs had forfeited the issue by failing to present it in response to Sherman Hospital's posttrial motion. See 387 Ill. App. 3d 401, 403 n.1. This was a fundamental misapprehension of the law. There was no forfeiture, for it is well established that an appellee may argue in support of the judgment on any basis which appears in the record (see *Hayes v. Board of Fire & Police Commissioners*, 230 Ill. App. 3d 707, 710 (1992)), and an appellate court may affirm a trial court's judgment on any grounds which the record supports (see *Water Tower Realty Co. v. Fordham 25 E. Superior, L.L.C.*, 404 Ill. App. 3d 658, 665 (2010)), even where those grounds were not argued by the parties (see *Redd v. Woodford County Swine Breeders, Inc.*, 54 Ill. App. 3d 562, 565 (1977)).

¶ 49   Illinois has long recognized that hospitals may be held liable for institutional negligence, which is also known as direct corporate negligence. Under this doctrine, liability is predicated on the hospital's own negligence, not the negligence of the physician who treated the patient. The hospital's duty is ordinarily administrative or managerial in character. To satisfy the duty, a hospital must act as would a "reasonably careful hospital" under the circumstances. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291-92 (2000).

¶ 50   Whether the hospital breached its duty in this case was a question of fact for the jury to decide. See *Iseberg v. Gross*, 227 Ill. 2d 78, 87 (2007). In its posttrial motion, Sherman Hospital contended that the jury's verdict was contrary to the manifest weight of the evidence, but a verdict is contrary to the manifest weight of the evidence only when the opposite conclusion is clearly evident or when the jury's findings prove to be unreasonable, arbitrary and not based upon any of the evidence. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 179 (2006). In discussing the sufficiency of the evidence in this case, the appellate court made no mention of this standard. Instead, it undertook its own assessment of the record. See 387 Ill. App. 3d at 402-03. This is something it should not have done, for "[i]t is well established that, in an appeal from a jury verdict, a reviewing court may not simply reweigh the evidence and substitute its judgment for that of the jury." *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003).

¶ 51   Assuming for the sake of argument that the appellate court could properly have concluded that the evidence would not support a verdict against Sherman Hospital based on the theory of institutional negligence, leaving the professional negligence theory as the only potentially viable basis for recovery, I would agree with the majority's analysis of IPI Civil (2006) No. 105.01 as to whether the instruction (1) properly stated the standard of care for claims based on professional negligence or (2) erroneously instructed the jury on use of personal knowledge. I would also agree with the substance of the majority's discussion of Sherman Hospital's primary challenge to the instruction, namely, that the instruction impermissibly expands the types of evidence which may be considered by the jury in

-11-

professional negligence actions. In my view, however, that issue is not properly before us.

¶ 52　　Sherman Hospital admitted both in its brief and at oral argument that all the evidence adduced by plaintiffs regarding the standard of care applicable to their professional negligence claim consisted of permissible expert testimony. None of the other types of evidence mentioned in IPI Civil (2006) No. 105.01 were presented to the jury with respect to that claim. It was therefore impossible for the jury to have considered evidence it should not have. That being so, the challenged expansiveness of the instruction could not have affected the outcome and therefore worked no prejudice on Sherman Hospital. There being no prejudice, this aspect of the instruction could not serve as a basis for disturbing the judgment of the circuit court. See *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 274 (2002). Where the result of a case will not be affected by how an issue is decided, the courts of Illinois normally refrain from deciding that issue. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). As we have repeatedly stated, advisory opinions are to be avoided. See, *e.g.*, *People v. Hampton*, 225 Ill. 2d 238 (2007).

¶ 53　　The majority seeks to avoid this established principle of judicial review with the observation that "[i]n another case *** with different proofs and theories of recovery, serious prejudice could very well result where a jury is instructed to consider the same evidence in deciding the distinct claims of professional negligence and institutional negligence, particularly where expert testimony is lacking." *Supra* ¶ 30. While I do not disagree with this possibility and appreciate the value of clarifying the law, I am also mindful of our admonition that courts of review should not ordinarily decide abstract questions, or review cases merely to establish precedent. *People v. Latona*, 184 Ill. 2d 260, 281 (1998). In my view, we should not depart from these principles absent compelling justification for doing so. I see no such justification here. Accordingly, while I agree with the result reached by the majority, I would leave resolution of this issue for another day.