2023 IL App (1st) 221391-U

SIXTH DIVISION
December 15, 2023

No. 1-22-1391

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20 CR 7786 |
| | ) | |
| MARQUIS NICHOLS, | ) | Honorable |
| | ) | Michael J. Kane, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We affirm defendant Marquis Nichols's conviction for armed robbery because the circuit court's jury instruction error did not amount to plain error, and his trial counsel was not ineffective for not objecting to the admission of the victim's hearsay prior consistent statements because the statements were admissible as excited utterances.

¶ 2     After a jury trial, defendant Marquis Nichols was found guilty of armed robbery with a dangerous weapon other than a firearm (720 ILCS 5/18-2(a)(1) (West 2018)) and sentenced to 11 years' imprisonment. He appeals, arguing he should be granted a new trial because the circuit court committed plain error by giving a nonpattern jury instruction, and his trial counsel was ineffective for not objecting to the admission of hearsay prior consistent statements from the victim Nikao Parque. We affirm.

¶ 3                                        BACKGROUND

¶ 4     Nichols was charged by indictment with three counts: count I for armed robbery with a firearm, count II for armed robbery with a dangerous weapon other than a firearm, and count III for aggravated unlawful restraint, all arising from an incident on March 6, 2020. The State nol-prossed count III.

¶ 5     At trial on July 19, 2022, Parque testified that he met Nichols through the MeetMe phone application. Parque was "looking for friends to hang out with in the area." Nichols's alias was "Quintessential" on MeetMe. Parque met Nichols in person for the first time in December 2019 at an apartment complex in Dolton, Illinois. They "talked" and "roughhouse[d]," and Parque paid Nichols $25 on the Cash App phone application in return. The two saw each other a second time, at which time the two engaged in "play fighting" and "roughhousing," but "nothing sexual." Parque viewed Nichols as a brother.

¶ 6     Parque continued paying Nichols for a period to "help him out" with food and baby formula, but Nichols instead spent the money on cannabis. Additionally, despite Nichols's claim that he needed money for formula, Parque never saw a child while in Nichols's home. On occasion, Parque would refuse one of Nichols's requests, which angered Nichols and caused him to curse at Parque.

Eventually, Parque stopped responding to Nichols's requests, and blocked his number. Parque paid Nichols $380 in 21 payments over a period of months.

¶ 7    On March 6, 2020, Nichols contacted Parque through a different phone number and indicated he wanted to "make peace." Parque agreed, and picked Nichols up near the intersection of East 87th Street and South Escanaba Avenue in Chicago. Nichols told Parque he was "going out of town" and asked for money, but Parque refused. He also requested Parque's phone, which Parque gave to him. Nichols instructed Parque to travel through an alley as a shortcut to Bessemer Park, and as Parque did so, Nichols drew a firearm and hit Parque in the forehead with it. Parque "was bleeding" and "trying to talk [Nichols] down," but Nichols demanded that Parque drive to an ATM and withdraw money for Nichols to use for a flight. Nichols threatened to shoot and kill Parque if he did not comply. Parque, who was "sure" the firearm was loaded, unsuccessfully attempted to take the firearm from Nichols, but eventually convinced Nichols to calm down and place it on the floor. Parque was in the "worst pain [he] ever felt." At some point, he saw Nichols remove the firearm's clip, but then put it back in.

¶ 8    Parque drove to the Royal Bank branch on the 9200 block of South Commercial Avenue in Chicago, withdrew $260 across multiple transactions, and gave the money to Nichols. The ATM was a drive-through, and was surveilled by a camera. While Parque used the ATM, Nichols attempted to hide his face from the camera. Parque then drove towards the park, and asked Nichols for his phone back, but Nichols exited the vehicle and ran. Parque attempted to chase Nichols on foot, but Nichols jumped over a fence, and Parque ended the pursuit. He "hollered" for help, then returned to his vehicle and drove towards his home. On the way, he saw police officers, stopped his vehicle, and flagged the officers down. The officers took his report, and emergency medical personnel arrived. Parque vomited during his interaction with the officers. Eventually, an

ambulance took Parque to the hospital, where he received medical treatment. Days later, Parque spoke to a Chicago police detective, and identified Nichols in a photo array.

¶ 9    The State entered a photograph that Parque identified as accurately depicting his injury. The photograph, included in the record on appeal, depicts Parque with a wound and bruising on the left side of his forehead.

¶ 10    The State published the ATM surveillance video to the jury. The video, included in the record on appeal, depicts a van approach a drive-through ATM. Parque is identifiable as the driver, and someone is in the passenger seat. The passenger wears a hooded shirt and intermittently moves their head, both of which obscure the passenger's face. There appears to be conversation and interaction between Parque and the passenger. Parque often rubs his head while withdrawing the money. The time stamp at 8:40:54 shows Parque hand money to the passenger, and moments later, Parque drives away.

¶ 11    Parque stated that at a moment when the ATM video depicts him point with his finger, he was telling Nichols to put down the firearm. He believed the video "vaguely" depicted his injury, and showed him rubbing his head because he "was in a lot of pain."

¶ 12    The parties stipulated to the foundation of body camera video recording from Chicago police officer Koranacki. The State then published the recording to the jury.

¶ 13    The video, included in the record on appeal, begins at 8:56. Parque initially interacts with the officers while seated in the driver's seat of a van. He is visibly upset, and has a red mark on his forehead. Parque tells the officers that someone took his phone. Throughout the interaction, Parque appears distressed, and coughs and vomits. The responding officers repeatedly attempt to calm Parque down and tell him to breathe. The officers ask if Parque is intoxicated, which he denies, saying he is just sick. Parque identifies his assailant as "Quintessential." He tells the

responding officers that Quintessential held him at gunpoint and threatened to kill him, then hit him in the head with the firearm. Parque described the firearm as a black handgun, and told the officers that after the attack, Nichols instructed Parque to drive to the ATM. At 9:03:50, Parque exits the van and appears unsteady on his feet. He interacts with emergency medical personnel as the video concludes.

¶ 14   Parque testified that he believed he vomited frequently because he "got hit in the head that hard." He denied that he had been "smoking" or "drinking" anything on March 6, 2020. During the period where Nichols aimed the firearm at Parque, Nichols told Parque that his son died because Parque refused Nichols's requests for money.

¶ 15   On cross-examination, Parque agreed that he gave Nichols money because Nichols agreed to "hang out." Parque knew there was a camera at the ATM machine, but he did not mouth the words "I'm being robbed" during the transactions. Parque agreed he was "hysterical" during his interaction with the police officers.

¶ 16   On redirect, Parque testified that he flagged the officers down "a good 30 minutes or more" after Nichols ran from the vehicle.

¶ 17   Chicago police detective Bryan Reidy testified that he was assigned to work on Nichols's case on approximately March 6 or 7, 2020. Reidy contacted Parque on March 7. Parque informed Reidy that he knew Nichols before the incident, and provided Reidy with ATM receipts, screenshots of payments he made to Nichols via the Cash App, and a social media screenshot of Nichols. Reidy identified Nichols as a suspect based on the information Parque supplied, and instructed Chicago police detective Gerald Neals to conduct a photo array with Parque that included Nichols's photo. Parque identified Nichols in the photo array. Reidy also retrieved surveillance video from the ATM.

¶ 18    Later, Reidy learned Nichols had been arrested on another matter. Reidy interviewed Nichols while he was in custody, and filmed the interview. Before questioning him, Reidy Mirandized Nichols, who agreed to speak with Reidy. Nichols admitted that he knew Parque, and their relationship was based on Nichols giving Parque piggyback rides. Reidy asked Nichols about an incident on March 6, 2020, and explained to Nichols that Reidy had viewed ATM surveillance video. Nichols admitted he was with Parque and received money from him that day, then ran from his vehicle. He denied injuring Parque, or possessing a weapon during the incident.

¶ 19    The State published video of the interview to the jury. The video, included in the record on appeal, depicts Nichols's and Reidy's conversation. Reidy Mirandizes Nichols, then asks if Nichols knows Parque. Nichols admits that he does, and that he gave Parque piggyback rides for money. Nichols also admits that he "did play" Parque, and collected around $400 from him. Nichols relays that on March 6, 2020, he was with Parque and the two were supposed to go to the park, but Nichols instead ran from the vehicle after he obtained $260 from Parque. Nichols denied he had a firearm or physically injured Parque during this interaction. As the interview concludes, Nichols asks Reidy if he could be charged with something besides armed robbery.

¶ 20    On cross-examination, Reidy testified that he did not see anyone with a firearm on the ATM surveillance video. He agreed Nichols claimed he took Parque's money by deception. Specifically, Nichols received money for promises of piggyback rides in the future, but never actually gave Parque those piggyback rides.

¶ 21    Neals testified that he showed Parque a photo array on March 8, 2020, in which Parque identified his assailant. The State published the array to the jury. On cross-examination, Neals testified that Parque wrote on the form that Nichols hit him with a "revolver."

¶ 22    The parties stipulated that, if called, Nicole Pantera, an emergency medical technician, would testify that she responded to the incident at 9:08 p.m. on March 6, 2020, at which time Parque told her, in summary and not verbatim, that "his best friend brandished a weapon from the passenger seat and hit Nikao with the weapon on the left side of his forehead." Parque was transported to Advocate Trinity Hospital.

¶ 23    The parties also stipulated that, if called, Ruth Nackers, a physician's assistant at Advocate Trinity Hospital, would testify that she treated Parque on March 6, 2020. She observed "an abrasion surrounded by a contusion to the left side of his forehead." Parque told her someone hit him with the back of a firearm.

¶ 24    During the jury instruction conference, the parties discussed Illinois Criminal Pattern Jury Instructions (IPI) 14.05 and 14.06 in the context of count II for armed robbery with a dangerous weapon other than a firearm. The State's attorney proposed adding the phrase "a bludgeon" in parentheses to both instructions after the phrase, "otherwise armed with a dangerous weapon," and to also include phrase "a bludgeon" in the corresponding verdict form. Defense counsel objected to the modification, suggesting the only language should be "dangerous weapon other than a firearm." Counsel argued that, "to start talking about bludgeons, now we are going off in a whole [other] direction." The circuit court asked if the State would agree to the language, "dangerous weapon other than a firearm." The State refused, contending the jury would be confused by the "other than a firearm" phrase because the State contended that in this case "the firearm is both a firearm and a bludgeon at the same time." The court agreed with the State, but noted defense counsel's objection.

¶ 25    The next day, before closing arguments, defense counsel reiterated the objection to the modified instructions, labeled People's Instructions 13 and 14.[1] The circuit court maintained its ruling in favor of the State, explaining, "I believe this is the proper way to modify the instruction under the facts of this case, because the State is alleging both the gun and that the gun could be used as a blunt object or it could be another blunt object that would be used. So I'm going to let those two instructions go as modified."

¶ 26    During closing arguments, the State's attorney stated his focus at closing would be on the armed robbery jury instructions. Counsel then explained that Nichols faced two counts of armed robbery: "The first involves armed robbery with use of a firearm; and the second involves armed robbery with the use of a dangerous weapon, in this case a bludgeon." He emphasized, "The main difference between those two instructions is of course the description of the weapon, a firearm and a bludgeon." The State's attorney also highlighted the body camera recording, saying, "You heard what [Parque's] words were very shortly after the defendant took these items. He told the police right away, he took my money. He took my cell phone." Counsel contended that Parque testified Nichols "pulled a gun from somewhere around his body and struck [Parque] in the head with such force that" he blacked out. Regarding the alleged weapon Nichols used, counsel further argued, "we know the weapon used is a bludgeon for a number of reasons. We know that the defendant used that weapon to strike the victim, causing the injury that you've seen."

¶ 27    In his closing argument, defense counsel argued "the whole case" came down to what Parque said, and claimed the jury "can't believe [Parque]." Defense counsel emphasized there was no evidence of a firearm besides Parque's own testimony. Counsel summarized that, "The case

_____

[1] The record on appeal contains jury instructions that are not labeled, and appear to omit the modified 14.06 instruction at issue, but the report of proceedings contains the full language of both complained-of instructions.

comes down to do you believe beyond a reasonable doubt that [Parque] was hit in the head with a gun to get the money." Counsel contrasted the ATM video with the body camera recording, and stated "Why does [Parque] cry when he's in front of the police? Why does he cry when he's here in front of you, the jury? Why doesn't he cry at the ATM right after got slammed in the head? Why is that not upsetting? Why can he turn this on and off?" After positing that Parque could have hit his head while in the street after unsuccessfully chasing Nichols, defense counsel then showed portions of the body camera recording of Parque vomiting, and said, "Also, why is he throwing up? *** [I]s it he's been sick? That's what he told the police. Is it because he got hit in the head that he's puking? *** There's too much inconsistency."

¶ 28 On rebuttal, the prosecutor denied that Parque's demeanor in the body camera recording was "disjunctive" with the ATM video, and summarized, "You can see the victim's injury was clearly caused by a firearm that was used as a bludgeon."

¶ 29 Following the arguments, the circuit court instructed the jury, in relevant part, that "A person commits the offense of armed robbery with a dangerous weapon when he, while carrying on or about his person or is otherwise armed with a dangerous weapon, a bludgeon, knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force." The court continued, "To sustain the charge of armed robbery with a dangerous weapon, the State must prove the following propositions *** third proposition, that the defendant carried on or about his person or was otherwise armed with a dangerous weapon, a bludgeon, at the time of the taking."

¶ 30 On July 20, 2022, the jury found Nichols not guilty of armed robbery with a firearm but guilty of armed robbery with a dangerous weapon. The jury used the verdict form that read, "We,

the jury, find the defendant, Marquis Nichols, guilty of armed robbery while armed with a dangerous weapon (a bludgeon)."

¶ 31   Nichols filed a motion for a new trial, in which he did not raise the jury instruction issue regarding the "bludgeon" language. The circuit court denied Nichols's motion for a new trial, and following a hearing, sentenced him to 11 years' imprisonment. Nichols requested that his counsel not file a motion to reconsider sentence. This appeal followed.

¶ 32                                    JURISDICTION

¶ 33   This court has jurisdiction pursuant to Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Sept. 18, 2023), as the circuit court sentenced Nichols on September 6, 2022, and he filed his notice of appeal that same day.

¶ 34                                      ANALYSIS

¶ 35   On appeal, Nichols claims that the circuit court erred by giving a nonpattern jury instruction that included the term "a bludgeon" in the instructions and verdict form regarding armed robbery with a dangerous weapon other than a firearm. He also claims his trial counsel was ineffective for not making a hearsay objection to the State's introduction of statements by Parque contained in the body camera recording that were consistent with his testimony at trial.

¶ 36   We begin with the jury instruction issue. Both parties concede that Nichols forfeited this issue because he did not raise the claim in his posttrial motion, despite the detailed discussion and objection at trial. To preserve a claim for appeal, a party must make both a timely objection at trial and include the claim in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48.

¶ 37   Nichols advances multiple theories for why this court can still address the claim despite his forfeiture. Initially, he argues that the forfeiture rule should not apply here because constitutional issues are not forfeited by a party's failure to raise the claim in a posttrial motion. However, the

State argues, and we agree, that this theory is improper here. Not only does Nichols not explain what constitutional at issue could be at stake, but supreme court precedent is clear that jury instruction claims must be preserved through both a timely objection and inclusion in a posttrial motion. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005) ("Generally, a defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion."); see also *People v. O'Neal*, 2016 IL App (1st) 132284, ¶ 77 ("Because our supreme court has applied the posttrial-motion requirement to the very type of challenge defendant raises here—a jury instruction error—we must follow that rule.").

¶ 38    We may, however, still reach an unpreserved error if it constitutes plain error.[2] *Sebby*, 2017 IL 119445, ¶ 48. Plain error review is appropriate where a clear or obvious error occurred at trial and either (1) the evidence was closely balanced such that the error "severely threatened to tip the scales of justice against" the defendant, or (2) the error was so serious that "it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). A jury instruction error will not constitute second prong plain error unless the error created a serious risk that the jury incorrectly convicted based on a misunderstanding of the applicable law. *Herron*, 215 Ill. 2d at 193 (citing *People v. Hopp*, 209 Ill. 2d 1, 8 (2004)). A reviewing court must first determine if a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 39    Here, Nichols claims that the circuit court erred by modifying IPI 14.05 and 14.06, and the corresponding verdict form, for armed robbery with a dangerous weapon other than a firearm by

---

[2] We note that while Nichols did not address plain error until his reply brief, this does not constitute forfeiture of the argument. See *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010).

including the phrase "a bludgeon." The pattern instructions do not contain any additional language besides "dangerous weapon." Illinois Pattern Jury Instructions, Criminal, Nos. 14.05 and 14.06 (approved Jan. 24, 2014). Nichols contends that including the term "a bludgeon" could have confused the jury because it may not have understood that it was their responsibility to separately determine both (1) whether Nichols possessed an object, and (2) if he did, whether that object constituted a "dangerous weapon." Specifically, Nichols argues the phrase "a bludgeon" improperly impugned on the jury's responsibility to make an independent finding on the dangerousness element.

¶ 40    Generally, "[i]f an appropriate IPI instruction exists, it must be used." *People v. Simms*, 192 Ill. 2d 348, 412 (2000). The circuit court has discretion to give a nonpattern instruction, but the instruction must be an "accurate, simple, brief, impartial, and nonargumentative statement of the law." *People Bannister*, 232 Ill. 2d 52, 81 (2008). A defendant has the right to have the jury find him guilty beyond a reasonable doubt of each element of a charge. See *People v. Murray*, 2019 IL 123289, ¶ 28. "Whether the jury instruction accurately conveyed to the jury the applicable law is reviewed *de novo*." *People v. Hartfield*, 2022 IL 126729, ¶ 51.

¶ 41    The jury here found Nichols guilty of armed robbery with a dangerous weapon other than a firearm. 720 ILCS 5/18-2(a)(1) (West 2018). Whether an object qualifies as a "dangerous weapon" per the statute is a question of fact for the factfinder to determine. See *People v. Ligon*, 2016 IL 118023, ¶ 21.

¶ 42    We hold that the circuit court erred by including the phrase "a bludgeon" to modify the term "dangerous weapon" in the instructions and verdict form at issue. The pattern instructions sufficiently advised the jury that it had to determine whether Nichols possessed a dangerous weapon during the course of the robbery. By modifying the instruction, the court created the

potential for the jury to believe that it need only determine whether Nichols had an object, because, per the instruction, that object (if possessed) would automatically qualify as dangerous (by virtue of being "a bludgeon"). This is improper because under the law, it was the jury's province to find both elements—possession and dangerousness—beyond a reasonable doubt. It follows that the court here gave nonpattern instructions when sufficient pattern instructions existed, and those nonpattern instructions created a risk that the jury did not make an independent determination on an element of the claim. This constitutes error. *See Murray*, 2019 IL 123289, ¶ 28.

¶ 43    We next turn to whether this error constituted plain error. Nichols argues that both prongs apply. First, we must determine whether the evidence was closely balanced such that the error would qualify under the first prong. To determine if evidence is closely balanced, a reviewing court must conduct a "qualitative, commonsense assessment" of the evidence at trial. *Sebby*, 2017 IL 119445, ¶ 53. This requires the reviewing court to assess the evidence on each element of the charge, along with the evidence on witness credibility. *Id.* "Evidence may be closely balanced when a case tuns on a credibility determination between conflicting testimony," a circumstance often referred to as a "credibility contest." See *People v. Scott*, 2020 IL App (1st) 180200, ¶ 51. There is not a credibility contest, however, where one party does not present evidence, or where a party's account is "unrefuted, implausible, or corroborated by other evidence." *Id.* (quoting *People v. Montgomery*, 2018 IL App (2d) 160541, ¶ 31).

¶ 44    We find that the evidence here was not closely balanced, and thus the jury instruction error did not constitute first prong plain error. Parque testified that Nichols hit him in the head with a firearm, then forced Parque to drive to an ATM and withdraw money. Following that, according to Parque's testimony, Nichols ran from the vehicle, at which point Parque drove until he flagged

down police officers. He told the officers about his interaction with Nichols, then went to the hospital, where he received treatment for his injuries.

¶ 45    Every aspect of this account was corroborated by other evidence. The ATM video shows Parque rubbing his head. The body camera recording shows Parque with an injury to his head, and is time stamped approximately 16 to 17 minutes after the ATM video. Parque is visibly distressed, and coughs and vomits, prompting the officers to express concern over how upset he is. Emergency medical personnel arrives and administers aid to Parque, and the parties stipulated that he also received treatment at a hospital.

¶ 46    Conversely, Nichols did not enter any evidence, and his account comes only through his statement to Reidy, introduced by the State in its case-in-chief. In the statement, Nichols admits he manipulated Parque and took his money on March 6, 2020, and only denies he had a firearm or physically injured Parque. This part of Nichols's version is refuted by the direct and objective evidence that Parque had an injury to his head minutes after his interaction with Nichols.

¶ 47    On this record, Parque gave a credible and corroborated version of the events, while Nichols presented no evidence, meaning the evidence was not closely balanced. See *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 48. Moreover, even were we to entertain an argument that there is a credibility contest between Parque's trial testimony and Nichols's statement to Reidy, despite Nichols entering no evidence (a proposition for which Nichols does not provide any caselaw), the argument fails because Nichols's statement consists primarily of admissions to a crime against Parque, and only conflicts in the form of an implausible denial that Parque suffered an injury. See *Id.* (No credibility contest where "one party's version is unrefuted, implausible, or corroborated by other evidence."). As such, Nichols's argument that the evidence is closely balanced fails.

¶ 48    Turning to the second prong, we reiterate that Nichols has to show that the error created a serious risk that the jury convicted him based on a misunderstanding of the law. *Herron*, 215 Ill. 2d at 193.

¶ 49    While we believe that the jury instruction was erroneous, and thus there was some risk for jury confusion, we find that the on the specific record here, that risk did not reach the necessary "serious risk" threshold such that the jury erroneously convicted Nichols because it did not understand the law. The claim fails because both the evidence at trial, and the attorneys' closing arguments, cured most potential for damage from the error. The State's theory on armed robbery with a dangerous weapon other than a firearm was clear and singular—Nichols struck Parque on the forehead with a firearm. During closing arguments, the State's attorney clarified the instructions and its theory, explaining that if the jury believed Nichols used a firearm as a bludgeon to cause the injury on Parque's forehead, the "dangerous weapon other than a firearm" version of armed robbery was the appropriate charge. Indeed, defense counsel argued at closing that the case turned on whether or not the jury believed Nichols struck Parque in the head with a firearm—and the jury found Nichols guilty of just that.

¶ 50    Based on the clarity of the State's theory, the jury instruction clarifications from both sides during closing arguments, and the implications from the jury's verdict, we do not believe the erroneous instruction created a serious risk that the jury's verdict resulted from a misunderstanding of the law. Instead, these factors suggest that the jury understood that if it believed Nichols caused Parque's injury by hitting him in the head with the firearm, he should be found guilty—which is accurate under these circumstances. See *People v. Ware*, 2014 IL App (1st) 120485, ¶¶ 19-21 (citing *People v. Watt*, 2013 IL App (2d) 120183). The supreme court has held that the State can prove a firearm is a "dangerous weapon" when used as a bludgeon based on proof it was capable

15

of causing injury, or in fact did inflict injury. See *People v. Ross*, 229 Ill. 2d 255, 275-76 (2008). Here, the evidence the jury accepted (based on its verdicts) proved just that—the firearm was capable of causing harm as a bludgeon, and Nichols caused Parque harm by using it as a bludgeon. While the jury may not have understood its responsibility to make an independent determination of whether the object Nichols possessed was in fact dangerous, the way it fashioned its verdict demonstrates there was not a serious risk it would have acquitted Nichols had it been properly instructed.

¶ 51     We caution that an erroneous jury instruction which risks taking an element away from the jury could in other cases create the type of serious risk that requires reversal, and find only that the specific record here demonstrates such risk was sufficiently alleviated, making second prong plain error inappropriate under these circumstances.

¶ 52     Nichols argues that because the jury found him not guilty of armed robbery with a firearm, the verdict should be understood as the jury finding that he did not possess any object that caused harm to Parque. This argument fails because the jury's split verdict does not provide for the inference Nichols suggests. As explained above, the State can prove a firearm qualifies as a dangerous weapon if used as a bludgeon, even if the State cannot show the object can function as an actual firearm, and the jury's verdict here is consistent with this application of the law (which, again, both sides clarified in their closing arguments). See *Ross*, 229 Ill. 2d at 275-76.

¶ 53     Nichols also argues that, alternatively to plain error, his trial counsel provided ineffective assistance by not including the jury instruction issue in his posttrial motion. To establish a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's conduct was objectively unreasonable, and (2) the conduct prejudiced the defendant such that there was a reasonable probability that but for the unreasonable conduct, the result at trial would have been

16

different. *People v. Pingleton*, 2022 IL 127680, ¶ 53 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The defendant must establish both prongs, and if the reviewing court determines that a defendant cannot establish prejudice, it need not analyze whether counsel's conduct was deficient. See *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 54    We hold that Nichols cannot demonstrate prejudice for his ineffective assistance of counsel claim. As explained above, even if counsel had properly preserved the error, Nichols's claim would have failed because the record suggests the jury reached the verdict it intended, and thus there is not a reasonable probability the outcome would have been different had the circuit court given the unmodified instructions. See *Ramirez v. FCL Builders, Inc.*, 2014 IL App (1st) 123663, ¶ 195 (citing *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 28)). We note that Nichols may seek relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) regarding this ineffective assistance claim to the extent support for it may exist outside of the trial record.

¶ 55    Nichols's final claim is that trial counsel provided ineffective assistance because he did not object to the introduction of portions of Officer Koranacki's body camera recording that contained Parque's account of the incident, theorizing that these portions contained improper hearsay prior consistent statements under Illinois Rule of Evidence 613(c) (eff. Sept. 17, 2019). The State argues that counsel was not ineffective because (1) the objection would have been futile because the statements were admissible under the excited utterance exception to the hearsay rule (Illinois Rule of Evidence 803(2) (eff. Jan. 25, 2023)), and (2) counsel's failure to object was an intentional strategic decision, and thus cannot form the basis for an ineffective assistance claim.[3]

_____

[3] We note, as Nichols points out in his brief, that the report of proceedings indicates a sidebar was held immediately before the body camera recording was published, and the circuit court remarks, "I am going to sustain the objection at this point" when it, at some point, instructs the State to stop showing the recording. What "objection" the court is referring to, and what was discussed at sidebar, is unclear from the

¶ 56   As stated above, a defendant must demonstrate both objectively unreasonable conduct and prejudice therefrom to establish an ineffective assistance of counsel claim. *Pingleton*, 2022 IL 127680, ¶ 53. "Generally, matters of trial strategy will not support a claim of ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testing." *People v. Patterson*, 217 Ill. 2d 407, 441 (2005). It will not constitute unreasonable conduct if counsel fails to object to the admission of evidence where such an objection would be futile. *People v. Lawton*, 212 Ill. 2d 285, 304 (2004).

¶ 57   Here, Nichols claims his trial counsel was ineffective for failing to object to prior consistent statements because the statements constituted inadmissible hearsay. Hearsay is an out of court statement offered for the truth of the matter asserted, and is generally inadmissible. *People v. Williams*, 2022 IL 126918, ¶ 52. A witness' prior statement that is consistent with his testimony at trial is a category of hearsay, and such statements are typically inadmissible absent certain circumstances. One such circumstance is if the prior consistent statement qualifies under the hearsay exception for excited utterances. See *Watt*, 2013 IL App (2d) 120183, ¶ 43 (citing *People v. Davis*, 130 Ill. App. 3d 41, 54-56 (1984)). Hearsay statements are admissible under the excited utterance exception if the statement is "relating to a startling event or condition" and was "made while the declarant was under the stress of excitement caused by the event or condition." Ill. R. Evid. 803(2) (eff. Jan. 25, 2023).[4]

---

record, but the State advances no theory that defense counsel actually did object to the statements at issue, and as such, any argument to this effect would be forfeited. See Ill. S. Ct. R 341(h)(7), (i) (eff. Oct. 1, 2020).

  [4] We note that the State briefly argues that the body camera recording may be admissible because the Law Enforcement Officer-Worn Body Camera Act (50 ILCS 706/10-30 (West 2018)) can be read to require that body camera recordings always be admissible, but because the video here is admissible on a hearsay exception, we need not reach the issue. See *People v. Collins*, 2020 IL App (1st) 181746, and *People v. Collins*, 2022 IL 127584.

¶ 58    There is no dispute that the video shows Parque make statements consistent with his trial testimony—specifically that Nichols hit him with a firearm, then made him withdraw money from a drive-through ATM under threat of further violence. The video also shows that Parque was upset and vomiting during the interaction, and the responding officers repeatedly told him to calm down. Parque confirmed that he was upset by the incident during his trial testimony. The time stamps on the ATM video and body camera recording demonstrate that less than 20 minutes elapsed from the ATM stop until Parque flagged down the police officers.

¶ 59    Based on this record, we find that Parque's statements were likely admissible as excited utterances despite being hearsay prior consistent statements, and thus defense counsel's decision not to object to their admission did not constitute deficient conduct for the first prong of ineffective assistance of counsel. The video shows that Parque, only minutes removed from the incident at the ATM and Nichols running from his van, is upset, frantic, and physically ill. The officers express concern at how agitated Parque is, and try to calm him down. Thus, while Parque's statement that he is vomiting because he is sick adds some nuance to the issue, there nonetheless remains strong evidence in the record that Parque was still under the stress of the condition that caused him excitement when he made the statements at issue, making the statements admissible as excited utterances. See *Watt*, 2013 IL App (2d) 120183, ¶ 43. As such, it was reasonable for counsel to decide an objection would be futile. See *Lawton*, 212 Ill. 2d at 304.

¶ 60    We further note that, as the State contends, the record suggests Nichols's counsel intended to attack Parque's credibility by contrasting his agitated state with the officers with his ability to execute the ATM transactions. There is support for this argument from the fact defense counsel played the two videos in his closing, emphasizing alleged differences in Parque's demeanor. While this strategy failed, it was incumbent on counsel to attack Parque's credibility, and his attempt to

do so here was not so unreasonable that it could rise to the level of finding deficient conduct on a matter of trial strategy. *Id.*

¶ 61 Nichols argues that the proffered statements were inadmissible pursuant to cases that excluded body camera recordings because the recordings did not serve the nonhearsay purpose of showing the police officers' course of investigation. See *Collins*, 2020 IL App (1st) 181746, ¶¶ 30-35; *People v. Jura*, 352 Ill. App. 3d 1080, 1085-89 (2004). These cases are inapposite here, though, because admissibility would not have been based on the statements having a nonhearsay purpose; instead, the statements here are hearsay prior consistent statements, but admissible nonetheless as excited utterances. See *Watt*, 2013 IL App (2d) 120183, ¶ 43.

¶ 62 Nichols also argues that Parque's statements cannot be excited utterances because they occurred 30 minutes after the incident ended (we note the time stamps indicate 16 to 17 minutes, as mentioned above), and were given in response to the officer's questions, demonstrating that Parque was thinking clearly and able to interact with the officers. Both arguments fail. First, there is no set time limit for excited utterances, and the supreme court has found that a delay similar to the one here did not disqualify a statement as an excited utterance. See *People v. Sutton*, 233 Ill. 2d 89, 109 (2009) (20-minute lapse). Second, the law is also clear that it is not inherently disqualifying that the statements at issue were made in response to questioning. See *People v. Sullivan*, 366 Ill. App. 3d 770, 779-80 (2006). Most glaring here, however, is that the record simply belies Nichols's argument—any contention that Parque was not still upset because of a time lapse, or was only responding to questioning in a rational manner, is directly rebutted by the body camera recording itself showing Parque's evident agitation.

¶ 63 In sum, the record suggests a hearsay objection to the prior consistent statements would have been futile, and thus defense counsel reasonably chose not to object. We note that because

the claim here fails on the deficient conduct prong of an ineffective assistance claim, we need not analyze the prejudice prong. See *People v. Ramirez*, 2018 IL App (1st) 152125, ¶ 15 (citing *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998)).

¶ 64                                       CONCLUSION

¶ 65   The circuit court's jury instruction error did not create a risk that the jury reached a verdict it did not intend, and the evidence at trial was not closely balanced. Additionally, Nichols's trial counsel did not provide objectively unreasonable assistance for not objecting to the admission of Parque's prior consistent statements because the statements were likely admissible as excited utterances. As such, Nichols's claims fail, and we affirm his conviction.

¶ 66   Affirmed.