2023 IL App (1st) 230078

No. 1-23-0078

Opinion filed December 22, 2023

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| CHERYL WILSON, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) |  |
| v. | ) ) | No. 18 L 7017 |
| UNIVERSITY OF CHICAGO MEDICAL CENTER, | ) ) ) ) | The Honorable Preston Jones, Jr. |
| Defendant-Appellee. | ) ) ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     Cheryl Wilson sued the University of Chicago Medical Center (UCMC), alleging medical malpractice. Wilson claims two UCMC cardiac surgeons, Dr. John Blair and Dr. Atman Shah, breached their duty of care when they punctured the left atrium while repairing her mitral valve. UCMC moved for summary judgment, arguing Wilson failed to call an expert witness to establish that UCMC deviated from the standard care.

¶ 2     After a hearing, the trial court granted UCMC's motion. Wilson contends the trial court erred because the deposition testimony of Dr. Blair and Dr. Shah provided sufficient evidence

to establish a genuine issue of material fact as to the standard of care. We disagree and affirm. Wilson had the burden of establishing the standard of care and its breach, and the deposition testimony of Dr. Blair and Dr. Shah do not enunciate a standard of care. Moreover, without relying on expert testimony, a layperson would have no way of determining negligence. Finally, Wilson fails to show where Dr. Blair and Dr. Shah deviated from professional standards.

¶ 3                                            Background

¶ 4        Two UCMC cardiologists, Dr. Blair and Dr. Shah, performed a MitraClip procedure to repair a life-threatening heart condition caused by a leaky mitral valve. In a closed-heart procedure, the surgeon passes a clip, or MitraClip, through the patient's vein and into the heart's left atrium. To place the MitraClip, the surgeon uses a needle to open the septum so the clip can pass through to the left side of the heart. While operating on Wilson, Dr. Blair controlled the needle and the placement of the clip; Dr. Shah operated a transesophageal echocardiography (TEE) probe, an ultrasound that provides images of the heart. The outer wall of Wilson's left atrium was perforated during the procedure.

¶ 5        Wilson's complaint alleges Dr. Blair and Dr. Shah deviated from the standard of care by using undue force when passing the needle through the septum, causing the puncture. To support her claim, Wilson pointed to UCMC's operative report, which stated, in part, that the perforation occurred "during attempted MitraClip for severe mitral regurgitation [when] the transseptal [needle] inadvertently punctured the left atrial free wall." She also noted that UCMC's TEE echo report stated that "[i]maging revealed [the] transeptal needle likely perforated the left atrial free wall."

¶ 6          In their depositions, neither Dr. Blair nor Dr. Shah testified that the transseptal needle caused the perforation. According to Dr. Blair, he did not believe the needle could have caused the puncture because "the leading edge of the [transeptal] sheath is not sufficient to puncture" the outer wall of the heart. Dr. Blair did, however, believe that the larger sheath used during the procedure, which carries the MitraClip, could have perforated Wilson's left atrium. He further explained that the medical records' reference to the perforation occurring "during the transseptal puncture" referred to the entire procedure. Dr. Shah agreed, testifying that the MitraClip sheath could have caused the complication. He explained that they could see the sheath carrying the needle during the procedure, and it "did not come into contact with the wall of the left atrium." Both doctors testified that a puncture to the left wall of the atrium is a known complication of MitraClip procedures that can occur when a physician uses a reasonable degree of care.

¶ 7          Wilson also relied on the deposition testimony of her fiancé, Larry Sobel, to show Dr. Blair and Dr. Shah breached the standard of care. Sobel testified that after the surgery, Dr. Blair apologized and said he made a mistake. Sobel claimed Dr. Blair said, "some people have a hole in the septum, some people don't. I was trying to push, push too hard, you know." Wilson similarly testified that Dr. Blair said to her, "I'm very sorry that this happened. *** I take full responsibility. I know it was my fault." Neither Sobel nor Wilson testified that Dr. Blair indicated what equipment caused the perforation.

¶ 8          In his deposition, Dr. Blair did not recall the words he used during these conversations. Dr. Blair explained to Sobel that damage to the left atrial wall was a known complication but could not speculate on specifics.

¶ 9      During the procedure, UCMC was testing a Siemens TEE echo machine. Wilson argued that Dr. Blair and Dr. Shah could not properly visualize the procedure because they switched from Siemens to the hospital's Phillips machine. Dr. Shah's testimony does not indicate that this switch impaired their ability to visualize the procedure. He said TEE echo machines do not always provide perfect visuals, and sometimes parts of a heart cannot be seen. Dr. Robert Lang, who watched the TEE imaging during the procedure, testified in his deposition that he believed the switch occurred after they noticed a complication and not before. Dr. Lang said the decision to switch machines complied with the standard of care and did not cause the complication.

¶ 10      Instead of presenting an expert witness, Wilson relied on the deposition testimony of Dr. Blair and Dr. Shah to establish the standard of care. Wilson noted that Dr. Blair testified that "a reasonable doctor will use TEE, fluoroscopy, and even Detrol pressure measurement" to mitigate risk during a MitraClip procedure. Wilson also pointed to Dr. Shah's deposition testimony that physicians performing a MitraClip procedure have a duty to use reasonable care to avoid perforating the outer wall of the left atrium.

¶ 11      Likewise, Dr. Blair testified that physicians must use "the appropriate amount of force" during the procedure and rely on machines to help visualize the procedure and pressure measurements to avoid complications. In response, UCMC argued that Dr. Shah testified that while a lack of care could increase the chance of complications, a puncture of the left atrium could occur even when "a physician uses all the care that he or she tries to muster."

¶ 12      Following discovery, UCMC moved for summary judgment, arguing Wilson failed to present sufficient evidence, including the testimony of an expert witness, to show Dr. Blair and Dr. Shah deviated from the standard of care. Wilson responded that expert witness testimony

was unnecessary because Dr. Blair's and Dr. Shah's deposition testimony established the standard of care. Wilson further asserted a reasonable fact finder could conclude, based on this testimony, that the physicians breached the standard of care. Wilson's arguments focused on the testimony regarding the pressure used by Dr. Blair while placing the transeptal sheath and the switch between the machines.

¶ 13 After a hearing, the trial court entered a final order granting UCMC's motion for summary judgment, stating its reasons on the record. Wilson failed to provide a transcript of the hearing.

¶ 14 Analysis

¶ 15 Illinois Supreme Court Rule 341(h)(6)

¶ 16 As an initial matter, UCMC asks us to strike Wilson's statement of facts for failing to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) as improper in form, argumentative, misstating material facts, and failing to cite to the common law record properly.

¶ 17 Rule 341(h)(6) requires a statement of facts to be accurate and fairly presented "without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Dismissal of an appeal for violating Rule 341(h)(6) falls within our discretion. See *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 21. To the extent Wilson's statement of facts violates Rule 341(h)(6), our review is not hindered, given UCMC's additional statement of facts. Although we will not strike Wilson's statement of facts, we will disregard arguments and unsupported statements. See *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461, ¶ 3. Further, we admonish Wilson's counsel to adhere to the requirements of the supreme court rules in future appeals.

¶ 18 Standard of Review

¶ 19    We review a trial court's grant of summary judgment *de novo. Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14. Summary judgment means no genuine issues of material fact remain, and the moving party deserves judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). In reviewing a grant of summary judgment, we construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally for the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008); 735 ILCS 5/2-1005(c) (West 2022). Regardless of the trial court's reasoning, we may affirm on any basis in the record. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006).

¶ 20                                    Standard of Care

¶ 21    In a medical malpractice claim, a plaintiff must show (i) the applicable standard of care, (ii) the physician deviated from that standard of care or was unskillful or negligent, (iii) injury to the plaintiff, and (iv) the physician's negligence or deviation from the standard of care directly or proximately caused the injury. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 112, (2004). Generally, a plaintiff presents expert medical testimony establishing the standard of care from which the defendant physician deviated. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 52. An expert witness helps the finder of fact make sense of medical evidence and determine the defendant physician's negligence or lack of skill. *See McWilliams v. Dettore*, 387 Ill. App. 3d 833, 845 (2009); *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (1978).

¶ 22    On rare occasions, however, the defendant physician provides the expert testimony. See *Metz v. Fairbury Hospital*, 118 Ill. App. 3d 1093, 1097 (1983). Expert witness testimony becomes inessential when the physician's conduct is so grossly negligent or commonplace that a layperson can assess it. *Id.* at 1098. Examples of negligent acts within a juror's common knowledge include a sponge or scalpel left in a patient after surgery. *Id.*

¶ 23         Wilson contends that the trial court erred because Dr. Blair and Dr. Shah established the standard of care. Specifically, Wilson points to Dr. Shah's deposition testimony, agreeing that a physician must use reasonable care to avoid puncturing the wall of the left atrium and acknowledging that should a physician not use reasonable care, "it's possible they could puncture the wall." Dr. Shah added that a physician could puncture "the left atrium wall *** even if he or she uses all the care that he or she tries to muster." Further, Dr. Shah acknowledged some mechanical force must be exerted against the needle to puncture the septum and stated that exerting mechanical force "may" "raise[ ] the possibility of the mechanical force being too much." Dr. Blair similarly testified that "the appropriate amount of force or pressure is needed to cross a structure," and a reasonable physician can avoid puncturing the outer wall of the heart by taking "reasonable steps."

¶ 24         Wilson relies on *Metz* to support her contention that Dr. Blair and Dr. Shah established the standard of care. That holding, however, leads to the opposite conclusion. In *Metz*, several days after a hospital treated the patient for severe abdominal pain, the patient, in more significant pain, sought treatment from a clinic where physicians determined he needed immediate surgery. *Id.* at 1094, 1096. While operating, the clinic physicians discovered, contrary to their diagnosis, that the catheter inserted at the hospital was in an improper position, causing the pain. *Id.* at 1097. The clinic physicians testified in their depositions that they did not check the patient's hospital medical records and charts, which would have revealed the misplaced catheter before the patient underwent surgery. *Id.* The patient sued the hospital and the physicians, alleging negligence. *Id.* at 1094. The hospital filed a third-party complaint against the clinic physicians, claiming they misdiagnosed the patient and performed unnecessary procedures. *Id.* at 1094-95. The clinic physicians acknowledged the misdiagnosis but denied

negligence. *Id.* at 1095. The hospital relied solely on the clinic physicians' deposition testimony to establish the standard of care, arguing a jury could determine the clinic physicians were negligent in not diagnosing the misplaced catheter before operating. *Id.* at 1097. The trial court concluded that the hospital had not furnished enough evidence to demonstrate a breach of the standard of care. *Id.* at 1094.

¶ 25    The appellate court affirmed. The court noted that in some cases, an expert witness is unnecessary to establish the standard, such as when " 'the physician's conduct is so grossly negligent or the treatment so common that a layman could readily appraise it.' " *Id.* at 1098 (quoting *Walski*, 72 Ill. 2d at 256). But, the court found that because nothing in the clinic physicians' testimony touched on the standard for requesting transferred patient records or charts, their testimony could not determine a breach of the standard of care. *Id.* Even though Metz's health problem turned out to be uncomplicated, the issue of whether the clinic physicians were negligent is not within a layman's common knowledge and requires expert testimony regarding the general standards for acquiring transferred patients' medical records and charts. *Id.* Absent this evidence, the trial court did not err in directing a verdict for the defendant hospital. *Id.*

¶ 26    Like the testimony of the clinic physicians in *Metz*, Dr. Blair's and Dr. Shah's testimony fails to establish the standard of care. Indeed, neither Dr. Blair nor Dr. Shah made statements on the standard of care. While Dr. Blair and Dr. Shah acknowledged a physician should use an "appropriate" amount of force and some amount of force could be "too much," notably absent is testimony or evidence establishing what the "appropriate" amount of force is for this procedure or this patient, how much force is "too much," and the risks of puncturing the left

atrial wall even if, as Dr. Shah testified, "a physician uses all the care that he or she tries to muster."

¶ 27        Moreover, Dr. Blair's postoperative statements to Sobel and Wilson purportedly taking responsibility and admitting fault do not identify, let alone establish, the standard of care. Neither party cites, nor did our research uncover, Illinois cases addressing the issue. But courts in other jurisdictions have held that a physician's admission of fault does not establish the standard of care or its breach. See, *e.g.*, *Locke v. Pachtman*, 521 N.W.2d 786, 789 (Mich. 1994) (surgeon's alleged statements, " ' "I knew the needle was too small when I used it" ' " and patient's injuries were her fault were insufficient to establish standard of care and breach of that standard in medical malpractice case for injuries sustained when needle broke during surgery and became lodged in patient's muscle); *Phinney v. Vinson*, 605 A.2d 849 (Vt. 1992) (affirming, doctor's alleged admission that he performed " 'inadequate' " transurethral resection of patient's prostate and his apology to patient " 'for his failure to do so' " were insufficient to raise jury question on standard of care, breach of that standard, or causation as elements of medical malpractice claim).

¶ 28        Further, the testimony provides conflicting assessments of whether the sheath carrying the transeptal needle or the sheath carrying the MitraClip caused the perforation. When asked about the two TEE echo machines, neither Dr. Blair nor Dr. Shah testified that switching the machines violated the standard of care. The most unambiguous statement on visualizing the procedure came from Dr. Shah, who said physicians sometimes, under the best circumstances, obtain limited visuals of the heart during these procedures. None of the testimony satisfies Wilson's burden to establish the standard of care under the Illinois Supreme Court's narrow reading of *Metz*. See *Studt v. Sherman Health Systems*, 2011 IL 108182 ¶ 26 (holding that

*Metz* "provides, at most, only limited support for the use of evidence other than expert testimony in a professional negligence case").

¶ 29        Wilson claims switching between TEE echo machines caused a visualization problem, although nothing in the record indicates this. Again, only Dr. Shah testified that physicians may not fully visualize the patient's heart using the proper equipment. Dr. Lang testified that the decision to switch complied with the standard of care. And Dr. Blair and Dr. Shah testified that the perforation was a known complication of the procedure.

¶ 30        The depositions leave unanswered what went wrong during the procedure. Without an expert witness, a layperson would have no clue about the appropriate force in a closed-heart procedure or the proper use of a TEE echo machine. Neither explanation compares to the classic example of leaving something inside a patient during surgery.

¶ 31        In light of the general nature of Dr. Blair's and Dr. Shah's testimony and the complicated logistics of the MitraClip procedure, expert witness testimony was necessary to establish the standard of care.

¶ 32                              Deviation From Standard of Care

¶ 33        Wilson contends the evidence shows that Dr. Blair and Dr. Shah deviated from the standard of care, pointing to two separate acts as potentially negligent: (i) Dr. Blair pushing too hard when placing the transseptal needle, and (ii) the switch between the TEE echo machines interfering with Dr. Shah's ability to visualize the procedure.

¶ 34        We first address the testimony regarding the force used in placing the transeptal needle. Wilson cites Sobel's testimony as evidence that Dr. Blair used too much force during the procedure. Sobel testified that Dr. Blair acknowledged he pushed "too hard" during the procedure. Wilson argues this amounts to an admission Dr. Blair breached the standard of care

under Illinois Rules of Evidence 801(d)(2(D) (eff. Oct. 15, 2015) (statement not hearsay if "[t]he statement is offered against a party and is *** a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). Admissibility depends on whether (i) Dr. Blair made the statement as a UCMC employee during his employment and (ii) it is offered against UCMC. See *Jefferson v. Mercy Hospital & Medical Center*, 2018 IL App (1st) 162219; *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746. UCMC does not dispute the admissibility of Sobel's testimony.

¶ 35        Instead, UCMC argues for ignoring the testimony as self-serving and unreliable. See *Reuben H. Donnelley Corp. v. Krasny Supply Co.*, 227 Ill. App. 3d 414, 421 (1991) ("[i]n determining whether factual issues exist for purposes of a summary judgment motion, the court must ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence"). UCMC claims (i) Sobel's testimony was incomplete because he could not remember whether Dr. Blair gave specifics on what caused the complication; (ii) the testimony was unsupported by other evidence in the record and Dr. Blair could not remember the specifics of this conversation; and (iii) even if Dr. Blair admitted to a mistake, this does not prove the element of proximate cause because proof of mistake or harm is not evidence of lack of skill or negligence. *Kemnitz v. Semrad*, 206 Ill. App. 3d 668, 675 (1990) (citing *Scardina v. Colletti*, 63 Ill. App. 2d 481, 488 (1965) (holding existence of injury alone was not enough to prove negligence)).

¶ 36        Because this is an appeal on a motion for summary judgment, we view the testimony in Wilson's favor and assume the credibility of Sobel's testimony regarding Dr. Blair's apology. We agree that Dr. Blair's admission that he "push[ed] too hard" might support Wilson's

contention that he deviated from the standard of care. See *Wickoff v. James*, 324 P.2d 661, 663-64 (Cal. Dist. Ct. App. 1958) (evidence that physician came out of operating room and said "Boy, I sure made a mess of things" and that by inserting sigmoidoscope in patient's rectum he "busted" the intestine, raised question for jury as to whether physician deviated from the standard of care). But without expert witness testimony on the specific professional standard, nothing conveys the interplay between too much force and a negligent amount of force. What is the appropriate amount of force for this procedure? The record suggests some patients have a hole in their septum. Is the standard of care different for those patients? What other factors does a physician consider when deciding how much force to use? Even if we give weight to Sobel's testimony, what remains are critical unanswered questions on the standard of care, Wilson has not met her burden.

¶ 37     Next, we turn to the testimony regarding the switch between the TEE echo machines. Wilson argues the switch alone breaches the standard of care. The testimony does not support her argument. Dr. Lang and Dr. Shah testified that the switch complied with the standard of care, and neither physician indicated that the switch impaired the ability to visualize the procedure.

¶ 38                                         Proximate Cause

¶ 39     Wilson's opening brief makes no mention of proximate cause, forfeiting the issue. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in appellant's brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Nonetheless, contrary to Wilson's assertion in her reply brief, she failed to establish proximate cause.

¶ 40      A plaintiff typically must establish proximate cause to a reasonable degree of medical certainty by presenting expert witness testimony. *Vanderhoof v. Berk*, 2015 IL App (1st) 132927 ¶ 60 (citing *Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 843 (2010)). "The causal connection must not be contingent, speculative, or merely possible." *Townsend v. University of Chicago Hospitals*, 318 Ill. App. 3d 406, 413 (2000). "If the plaintiff fails to create a proximate cause fact issue for the jury to consider, no *prima facie* case is made \*\*\*." *Id.*

¶ 41      Wilson presented no expert testimony on proximate cause. Instead, she again relies on Dr. Blair's deposition testimony that if a physician does not use reasonable care, it is "possible" they could puncture the wall of the left atrium, as well as the operative report stating the "transeptal [needle] inadvertently punctured the left atrial free wall." Dr. Blair's testimony fails to show to a reasonable degree of medical certainty that, as Wilson contends, pushing "too hard" proximately caused her injury. Dr. Blair simply acknowledged that failing to use "reasonable care," which, as noted, Wilson did not establish, makes a puncture "possible." The operative report details the nature of the injury—a transeptal needle puncture of the left atrial wall—but does not explain what caused it.

¶ 42      Without expert testimony regarding the standard of care, deviation from the standard of care, or proximate cause, the trial court properly granted summary judgment for UCMC.

¶ 43      Affirmed.

*Wilson v. University of Chicago Medical Center*, **2023 IL App (1st) 230078**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-7017; the Hon. Preston Jones Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Michael S. Baird, of Stotis & Baird Chtrd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Daniel B. Mills, Robert E. Sidkey, and Robert L. Larsen, of Cunningham, Meyer & Vedrine, P.C., of Chicago, for appellees. |