2024 IL App (1st) 232342-U

THIRD DIVISION
December 26, 2024

No. 1-23-2342

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| LAWRENCE DELEGGE and GAIL DELEGGE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County |
| | ) | |
| v. | ) | No. 22 L 3247 |
| | ) | |
| JEFF FANK, a/k/a JEFF ADAM, | ) | Honorable |
| | ) | Thomas More Donnelly, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Affirming the judgment of the circuit court of Cook County reversing its prior grant of sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).

¶ 2     Plaintiffs Lawrence DeLegge and Gail DeLegge filed a complaint in the circuit court of Cook County against defendant "Jeff Fank, a/k/a Jeff Adam," an individual whose full name is Jeffrey Adam Fank.  After the complaint was voluntarily dismissed, defendant filed a motion for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).  The circuit court imposed sanctions against plaintiffs and their attorney but subsequently reconsidered its ruling and denied sanctions.  On appeal, defendant challenges this denial.  As discussed below, we affirm.

¶ 3                                          BACKGROUND

¶ 4                                   *The Remodeling Project*

¶ 5      Plaintiffs wished to add a sunroom and patio to their residence in the 2600 block of North

Waterman Avenue in Arlington Heights, Illinois (the property).  Identifying himself as "Jeffrey

Adam," defendant presented proposals from multiple contractors to plaintiffs.  Plaintiffs selected

a proposal from JNP Construction Services (JNP).

¶ 6      The JNP contract, executed on December 7, 2018, included construction and pricing

details; the total project price was $96,000.  Lawrence DeLegge signed the contract as the

customer, and "Jeffrey Adam" (*i.e.*, defendant) signed as the "Representative" of JNP.

¶ 7      After the construction project was underway in 2019, plaintiffs expressed frustration to

Pedro Melendez (Melendez)—who was doing business as JNP[1]—as to the timing, quality, and

cost of the work.  Plaintiffs were particularly concerned about a blog which contained negative

information regarding the history and reputation of defendant, who was performing some of the

remodeling work at the property.  In an October 30, 2019, email to plaintiffs, Melendez stated:

"I understand you may be feeling uneasy and not comfortable in trusting Jeff because of the

blog, please let me reassure you that this is my job and my company name that's on the chopping

block.  I will make sure Jeff gets all work on contract and add ons done.[2]"  On the following

day, Melendez wrote: "Jeff is my worker.  I pay him, if the job is not done, I won't pay him."

---

[1] Defendant has represented that "he acted as a sales representative for several construction businesses[,] among them: Pedro Melendez who held himself out as JNP Construction Services, American Deck Builders, Inc., and Charm & Hammer Construction."  According to defendant, each of these businesses evaluated plaintiffs' remodeling project, and JNP was selected.

[2] According to Melendez, plaintiffs had requested various changes and "extras," which resulted in $31,472 in additional charges from JNP.

¶ 8                                    *Melendez Lawsuit*

¶ 9      Following multiple payments and allowances, plaintiffs allegedly owed $30,000 to JNP. "Pedro Melendez Individually and d/b/a JNP Construction Services" filed a mechanic's lien against the property in January 2020.  In March 2020, Melendez (individually and d/b/a JNP) filed a verified complaint in the circuit court of Cook County against plaintiffs and their mortgagees to foreclose on the mechanic's lien (case number 20 CH 3142).  The complaint included a breach of contract count against plaintiffs for their alleged failure to pay the outstanding balance.

¶ 10     Plaintiffs filed a verified three-count counterclaim against Melendez (individually and d/b/a JNP), alleging: (a) breach of contract; (b) breach of the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2020)); and (c) violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2020)).  Plaintiffs alleged, on information and belief, that JNP had authorized "Jeff Fank" to enter the contract, but plaintiffs were unaware that "Jeff Adam" was "Jeff Fank."  Plaintiffs further alleged, in part, that they were unable to adequately investigate the business practices of defendant and Melendez, as both operated "under fictitious identities," in violation of the Consumer Fraud Act.

¶ 11     Plaintiffs and Melendez, individually and d/b/a JNP, entered into a settlement agreement dated January 22, 2021, whereby Melendez released the mechanic's lien and paid $25,000 to plaintiffs, and the parties' litigation was dismissed with prejudice.  The settlement agreement included a release of Melendez (individually and d/b/a JNP) and "its insurance company, employees, successors, assigns, heirs, executors, and/or administrators."

¶ 12                                *Lawsuit Against Defendant*

¶ 13     In April 2022, plaintiffs filed a verified three-count complaint against "Jeff Fank a/k/a

3

Jeff Adam," alleging breach of contract, negligent workmanship, and violation of the Consumer Fraud Act. The complaint alleged, in part, that (a) defendant holds himself out as "Jeff Adam," (b) on December 7, 2018, defendant held himself out as an agent of JNP, which was not a legally recognized entity in Illinois, and (c) plaintiffs were not aware when they entered the contract that "Jeff Adam" was "Jeff Fank." Plaintiffs alleged that they would not have entered the JNP contract if they knew that "Jeff Adam" was defendant "because of his extensive history of committing fraud on homeowners."

¶ 14    Defendant filed a motion to dismiss the complaint based on plaintiffs' failure to join JNP and its "owner," Melendez. Defendant stated that he signed the contract with plaintiffs as an "agent" in a "representative capacity" and thus was not liable for the acts or defaults of the principal, *i.e.*, JNP/Melendez.

¶ 15    After defendant's motion to dismiss was denied, he filed an answer wherein he denied any knowledge that JNP was not legally incorporated in Illinois and was not registered under an assumed name in Illinois. In his affirmative defenses, defendant maintained that he was an "agent and salesman" for Melendez and that he "did not personally undertake to provide any services" to plaintiffs. Defendant also stated, on information and belief, that plaintiffs executed a release of all claims as to Melendez, individually and d/b/a JNP. According to defendant, the release of Melendez as the principal would release defendant, as the agent.

¶ 16    In July 2022, defendant filed a motion to dismiss plaintiffs' complaint pursuant to sections 2-619(a)(4) and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(4), (a)(9) (West 2022)). Defendant argued that plaintiffs were bound by the "judicial admission" in their counterclaim in the *Melendez* litigation that defendant was "authorized" to sign the contract on behalf of JNP. Fank further contended that the claims against him were

barred by the doctrines of *res judicata* and collateral estoppel and by the settlement agreement entered in the *Melendez* litigation.

¶ 17     In their response to the motion to dismiss, plaintiffs cited (and appended) Melendez's answer to plaintiffs' counterclaims in the *Melendez* litigation. In his answer, Melendez had stated that "Jeff Adam signed the contract on JNP's behalf," but "[a]t the time of the execution of the referenced contract, JNP was not aware that Jeff Adam was in fact Jeff Fank." Plaintiffs asserted that this contradiction raised a question of fact which precluded dismissal. Plaintiffs also argued that defendant did not provide an affidavit to support his claim that he was covered by the release in the settlement agreement in the *Melendez* litigation. Plaintiffs further maintained, in part, that Melendez and defendant performed different work and caused different damage to the property, even if their access to the property was through a single written contract.

¶ 18     Defendant was granted leave to file an amended answer, amended affirmative defenses, and counterclaims. In his affirmative defenses, defendant asserted, in part: (a) he signed the contract as an agent and was covered by the release in the *Melendez* litigation; (b) the action was barred by *res judicata* and collateral estoppel; and (c) plaintiffs were seeking a double recovery. In a counterclaim for spoliation of evidence, defendant asserted that plaintiffs had hired third-party contractors to alter the work of Melendez and his subcontractors, thus preventing defendant from obtaining evidence of the allegedly defective construction. Defendant also filed a counterclaim seeking a declaratory judgment providing, in part, that defendant was an "employee and agent" of Melendez and was thus covered by the release in the settlement agreement.

¶ 19     Shortly after filing a response to the affirmative defenses and counterclaims, plaintiffs filed a motion to voluntarily dismiss the matter without prejudice under section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2022)). In an order entered on April 6, 2023, the circuit court

granted the motion to dismiss the complaint; the order stated that the counterclaims remained.

¶ 20     Plaintiffs filed a motion pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)) for judgment on the pleadings as to the spoliation counterclaim and dismissal of the declaratory judgment counterclaim with prejudice.  Defendant filed a motion for summary judgment on the declaratory judgment counterclaim, arguing that because he was an employee and agent of Melendez—and plaintiffs knew or should have known that Melendez was the principal on the construction contract—defendant was released by the settlement agreement in the *Melendez* litigation.  Defendant noted that in an October 2019 email exchange with Lawrence DeLegge (discussed above), Melendez stated that "Jeff is my worker."

¶ 21     An affidavit from Melendez, dated May 5, 2023, was attached to defendant's motion for summary judgment.  Melendez acknowledged that, when he answered plaintiffs' counterclaim in the *Melendez* lawsuit in 2020, he denied that JNP authorized "Jeff Fank" to enter the construction contract, as Melendez did not know a "Jeff Fank" as of the time of the contract with plaintiffs.  Melendez further averred: "Based on my present knowledge that Jeffrey or Jeff Fank is one and the same person as Jeff or Jeffrey Adam, I admit that Jeffrey Adam a/k/a Jeffrey Fank *** was authorized to enter into the DeLegge contract on my behalf and on behalf of JNP Construction Services."  Melendez denied that defendant had any interest in JNP or was a joint venturer with Melendez on any project.

¶ 22     During a hearing on May 11, 2023, the circuit court granted plaintiffs' motion to dismiss and denied defendant's motion for summary judgment as to defendant's counterclaims.

¶ 23     Defendant subsequently filed a motion for attorney fees under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).  Defendant argued, in part, that plaintiffs and their counsel filed a complaint despite their knowledge that defendant was released by the settlement agreement in

*Melendez.* Defendant maintained that plaintiffs filed a lawsuit so as "to bully [defendant] into a further settlement further reducing the cost of the sunroom addition."

¶ 24    In their response to the Rule 137 motion, plaintiffs argued, in part, that (a) the release did not include agents, so defendant was not covered by the release, and (b) there was "no evidence" that defendant was Melendez's employee or that plaintiffs knew of such purported employment relationship before filing suit against defendant. Plaintiffs noted that Melendez's reference to defendant as his "worker" would apply to a subcontractor or an independent contractor as well as an employee. Plaintiffs also argued that they were entitled to rely on Melendez's prior denial (in the *Melendez* litigation) that defendant had the authority to enter the contract on behalf of JNP. Lawrence DeLegge averred that "[t]hat denial coupled with [defendant's] prior deceptions gave me grounds to sign a Release that did not include 'agents' in the covered class."

¶ 25                                *Circuit Court Orders*

¶ 26    In an amended memorandum opinion and order entered on August 30, 2023, the circuit court granted defendant's motion, finding that the complaint was not well-grounded in fact or law. The circuit court stated, in part, that the email exchanges with Melendez in October 2019 informed plaintiffs that "Melendez maintained control over [defendant]" and that they "knew he was an employee." The circuit court thus found that plaintiffs and their attorney—Scott Barber (Barber)—knew that the settlement agreement in *Melendez* had discharged defendant. Defendant was awarded attorney fees in the amount of $27,550 against plaintiffs and Barber.

¶ 27    Plaintiffs and Barber filed a motion for reconsideration, arguing that the circuit court erred in (a) finding that defendant was an employee of Melendez, (b) finding that defendant was discharged by the release in the *Melendez* litigation, and (c) ruling on the sanctions motion without a hearing. After hearing the arguments of counsel, the circuit court entered an order on

September 28, 2023, granting the motion to reconsider, vacating the August 30, 2023, order, and denying defendant's request for Rule 137 sanctions. The circuit court found that it had erred as it was under the "misapprehension" that plaintiffs' attorney had been informed that defendant was an employee and thus covered by the *Melendez* release. Noting an "ambiguity" regarding the status of "Mr. Fank/Mr. Adam," the court determined that sanctions were inappropriate.

¶ 28    Defendant subsequently filed a motion to reconsider the September 28, 2023, order, which the circuit court denied on November 16, 2023. Defendant timely appealed.

¶ 29                                           ANALYSIS

¶ 30    Defendant contends on appeal that plaintiffs and their counsel knew, or should have known, that the settlement in the *Melendez* litigation released defendant as Melendez's agent as a matter of law. Defendant further maintains that principles of *res judicata*, judicial estoppel, and the prohibition on double recovery—combined with a complaint "which wholly failed to state a cause of action"—point to the "improper purpose" for which the plaintiffs filed their lawsuit. Prior to considering these arguments, we must address a preliminary matter.

¶ 31                              *Motion Taken With the Case*

¶ 32    Defendant filed a motion before this Court to strike or disregard portions of the statement of facts and conclusion of plaintiffs' appellee brief. We entered an order taking this motion with the case.

¶ 33    Pursuant to Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), an appellant is to provide the reviewing court with the facts necessary to an understanding of the case. The facts must be stated fairly and accurately without comment or argument. *Id.*; *Ammar v. Schiller, DuCanto & Fleck*, 2017 IL App (1st) 162931, ¶ 12. Rule 341(i) states, in part, that an appellee need not provide a statement of facts "except to the extent that the presentation by the appellant

is deemed unsatisfactory." Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020). In this case, plaintiffs filed a statement of facts in their appellee brief; defendant maintains that this statement includes certain "impermissible arguments" and misstated or unsupported facts.

¶ 34   While a reviewing court may strike a statement of facts—or portions thereof—we do not find that any improprieties in plaintiffs' brief hinder our review in this matter. See *Mitchell v. Michael's Sports Lounge*, 2023 IL App (1st) 220011, ¶ 23. To the extent that any statement is argumentative or inconsistent with the record on appeal, we will disregard such statement. *Wilson v. University of Chicago Medical Center*, 2023 IL App (1st) 230078, ¶ 17.

¶ 35   Defendant also requests that we strike the "conclusion" section of the appellee brief, wherein the plaintiffs argue that the instant appeal violates Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). Rule 375(a) provides that sanctions may be imposed if a party or their attorney is determined to have willfully failed to comply with the appeal rules. *Id.* Rule 375(b) provides sanctions for frivolous appeals that are not taken in good faith. *Id.*; *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87. "The imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court." *Id.* To the extent that plaintiffs—or defendant—are seeking the award of sanctions pursuant to Rule 375, such request is denied.

¶ 36   The motion taken with the case is thus granted in part and denied in part, as provided herein. We now turn to the merits.

¶ 37                                        *Rule 137 Sanctions*

¶ 38   Rule 137 provides that any pleading, motion, or other document filed in court must be "well grounded in fact" and "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" and not brought for any improper purpose. Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). "The rule allows for a court, on motion or on its own

initiative, to impose sanctions against a party or its attorney for violating these requirements." *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 7. The party seeking sanctions bears the burden of proving that sanctions are warranted. *Kotara, LLC v. Schneider*, 2018 IL App (3d) 160525, ¶ 20.

¶ 39   "The primary purpose of the rule is to discourage attorneys and parties from filing frivolous or false matters and asserting claims without any basis in law or fact, by penalizing those who engage in such wrongful conduct." *Cook ex rel. Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 63. Rule 137 "is designed to discourage frivolous filings, not to punish parties for making losing arguments." *Lake Environmental*, 2015 IL 118110, ¶ 15.

¶ 40   To satisfy Rule 137, a litigant must make a "reasonable inquiry" into the facts alleged in a pleading. *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 590 (1996). "Courts are instructed to use an objective standard in evaluating what was reasonable under the circumstances as they existed at the time of the filing." *Sterdjevich v. RMK Management Corp.*, 343 Ill. App. 3d 1, 19 (2003). Accord *Pritzker*, 283 Ill. App. 3d at 590.

¶ 41   "Because Rule 137 is penal in nature, it will be strictly construed." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). The circuit court herein initially granted sanctions under Rule 137 but subsequently reconsidered and vacated its order. We recognize that "[w]hen reviewing a motion to reconsider that was based only on the application (or purported misapplication) of existing law," our standard of review is *de novo. People v. $280,020 U.S. Currency*, 372 Ill. App. 3d 785, 791 (2007). Nevertheless, the determination of whether to impose Rule 137 sanctions is a matter within the discretion of the circuit court and should not be disturbed absent an abuse of discretion. *Dowd & Dowd, Ltd.*, 181 Ill. 2d at 487. A circuit court abuses its discretion when "no reasonable person could have taken the view it adopted."

*Sterdjevich*, 343 Ill. App. 3d at 19.

¶ 42    Based on our review of the record, the circuit court's decision to vacate its earlier award of sanctions was reasonable.  At the time that the complaint against defendant was filed, plaintiffs and their counsel knew that a settlement agreement had been executed with respect to the *Melendez* litigation.  It is not clear, however, that they knew or should have known that defendant was an employee of Melendez and thus covered by the release in the settlement agreement, particularly where Melendez admittedly did not even know defendant's actual name. To the extent that defendant argues that his status as an agent representing Melendez placed him within the protections of the release, Melendez represented in a court filing that he authorized "Jeff Adam," not "Jeff Fank," to sign the construction contract with plaintiffs.  Following the filing of the complaint, defendant has described his role in multiple ways, including "agent," "sales representative," and "laborer."  As observed by the circuit court, the ambiguities in this case dictate against the imposition of sanctions.

¶ 43    In conclusion, as noted above, the party requesting sanctions under Rule 137 bears the burden of proof.  *Kotara, LLC*, 2018 IL App (3d) 160525, ¶ 20.  We find that the circuit court correctly determined that defendant did not satisfy such burden in this case.

¶ 44                                    CONCLUSION

¶ 45    The judgment of the circuit court of Cook County is affirmed.

¶ 46    Affirmed.